Marshall, Ch. J.,
 

 delivered the opinion of the scourt.
 

 (a)
 

 — The single question in this case is, whether an American regis i.ered vessel, in part transferred by parol, while at sea, to an American citizen, and resold to the original owners, on her return into port, before her entry, does, by that operation, lose her privileges as an American bottom, and become subject to foreign duties ?
 

 This question depends on the “act concerning the registering and recording of ships and vessels,” and more particularly on the 14th and 17th sections of that act. In construing the 14th section, much depends on the true legislative meaning of the word “ when.” The plaintiffs in error contend, that it designates the precise time when a particular act must be performed, in order to save a forfeiture ; the defendants insist, that it describes the occurrence which shall render that particular act necessary. That the term may be used, and, either in law or in common parlance, is frequently used, in the one or the other of these senses, cannot be controverted ; and, ©f course, the context must decide in which sense it is used in the law under ■consideration.
 

 The particular act to be performed, in order to save the forfeiture of the American character, and the privileges attached to it, is the obtaining a new register ; and the first inquiry is, whether this new register must be obtained, at the time of transfer, or at some other convenient time, on the event of a
 
 *35
 
 transfer. This would seem to the court scarcely to admit of a doubt. It has been correctly argued, that the precise *time to register the vessel anew cannot be prescribed by the word “ when,” because the direction
 
 1
 
 does not follow that word in the sentence, so as to be limited by it with respect to time. It is not said, that when a registered vessel shall be transferred or altered, she shall obtain a new register, or cease to be an American vessel, but the continuity of the sentence is broken, by interposing the words “in every such case,” thereby clearly making the forfeiture to depend on the failure to register, on the event described, not on the failure to register at the precise time when the event described occurs. This observation also applies to a subsequent part of the section, where the forfeiture is repeated, and depends on the failure to register, not on the failure to register at the precise time of transfer.
 

 But this construction, which is the fair and natural exposition of the words themselves, is rendered still more obviously necessary, by the nature of the case, and by the context. No man will contend, that the transfer or the change in a vessel, and the obtaining a new register, are to be simultaneous. The one must precede the other, and unless the transfer, or the repairs and alterations of the hulk or rigging are, in all cases, to be made in the office from which the new register is to be obtained, a reasonable interval between these acts must be allowed. This reasonable interval will depend on the nature of the case.
 

 When must a new register be obtained for a vessel which has been altered, or partially transferred to a citizen while at sea ? The act answers, at the time of delivering up her former certificate of registry. And when can this former certificate be delivered up ? Certainly, not until the return of the vessel, for the certificate is a paper necessary to the vessel, and is, therefore, always retained on board, while at sea. This construction is really so obvious and inevitable, that the endeavor to make it more clear, would seem to be a total misapplication of time.
 

 *The question, at what time the new register is to be obtained, p!:,-
 
 h
 
 and at what time the vessel shall be affected by the failure to obtain it? is susceptible of rather more doubt. There is no impossibility in obtaining a new register, before entry, and the necessity of doing so, must depend upon the words of the act, and upon the nature of the case. It is obvious, that on her arrival in port, the Missouri was an American vessel, and her cargo, when imported into the United States, was liable to the duties imposed on American, not on foreign bottoms. This is the clear consequence of establishing that a new register was not required, before the arrival of the vessel. If, then, the cargo, when imported, was liable only to the duties on goods imported in an American bottom, it would certainly require plain words, to charge them, on any subsequent failure, with higher duties.
 

 If the words of the section be examined, they are, as has been stated at the bar, prospective, not retrospective. They operate on future, not on past transactions. “The vessel shall be registered anew, otherwise she shall cease to be deemed a ship or vessel of the United States :” that is, she shall cease, after the lapse of the time when she ought to have been registered anew. But before that time had elapsed, she had, as an American vessel, actually imported a cargo whose liability to duties had commenced. So, in the subsequent clause : “ And in every case in which a ship or vessel is
 
 *36
 
 hereby required to be registered anew, if she shall not be so registered anew, she shall not be entitled to any of the privileges or benefits of a ship or vessel of the United States.” That is, her future earnings shall not be attended with the advantages annexed to American bottoms.
 

 This construction derives some corroboration from the lVth section. This section provides for the oath which is to be taken by an owner, on the entry of an American vessel. “ That upon the entry of every ship,”
 
 &o.
 
 *,-0-7 *If, upon the entry, the owner shall refuse to take this oath, the vesJ sel loses the privileges of an American bottom. If he takes it, and the oath discloses no fact which has already forfeited those privileges, she retains them. It is observable, that in order to retain them, she is not required to take out a new register, if an alienation has been made, and this strengthens the idea that if such an alienation be not in itself a forfeiture, a new register cannot be requisite, so far as respects the voyage already concluded.
 

 In the case of alienation to a foreigner, the privileges of an American bottom are
 
 ipso facto
 
 forfeited; but in the case of an alienation to a citizen, they are not forfeited, until after she ought to have been registered anew, and the oath which entitles her to enter as an American bottom does not require such new register.
 

 But it has been argued, that the omission to execute a bill of sale in writing, at the time of sale, is in itself a forfeiture of the American character. The words of the act are, “ and in every such ease of sale or transfer,” &c. These words attach to the omission the penalty which the law annexes to it, and no other can be inflicted. This is not that the vessel shall lose her American character, but that she shall be incapable of being registered anew. The bill of sale, therefore, can only be required, when the new register is to be obtained, and if it be then produced, the new register cannot be refused.
 

 An opinion has already been indicated, that in the case of a transfer or alienation at sea, a new register is not necessary to protect from alien duties the vessel which arrives, and the cargo which was actually imported, while the old register was in full force. But it is the opinion of the court, that in the case under consideration, no new register was requisite. The new register must be in everything but its date a precise copy of the old one. The oath to be administered on the entry could be truly and fairly taken. The *591 *names of all the persons who were, at the time, owners of the vessel were in the old register. The intermediate alienation and repurchase of part of the vessel had worked no forfeiture, and had created no necessity for a new register. The parties to whom the alienation had been made, not having property in the vessel at the time of entry, could not have taken the oath prescribed by law, which is in the present tense, and refers to the actual state of the property at the time of entry ; nor could a new register have issued to them, in order to be delivered up, for the purpose of making out another register for the original owners, who had become the present owners, without departing from the truth of the case, because the register also speaks in the present tense, and must recite the names of those who are the real owners at its date. Any new register which could have issued must have been, except in date, a duplicate of the old one, and must have been perfectly useless. Suppose, the ship had been
 
 *37
 
 altered in a foreign port, but before her arrival and entry, had resumed the form and dimensions mentioned in her old register, would it be pretended that a new register was necessary ? What would such new register be but a copy of the old one ? It is believed, that in such a case, it would not be suspected, that any forfeiture of the old register, or any necessity for a new one, was produced, and between the two cases there appears to be no difference made by the letter or the spirit of the act.
 

 The court is, therefore, unanimously of opinion, that sentence of the circuit court be affirmed.
 

 Judgment affirmed.
 

 (a)
 

 Present, Marshall, Chief Justice, Washington, Johnson and Livingston, Justices.