## Barnes *versus* Taylor.

Upon the sale or transfer of a vessel, from one person to another, the certificates of the registry or enrollment pass to the purchaser.

They are of no further value to the seller, and, in trover against a third person, in whose hands they may be found, he can recover nothing for them.

Trover, against the collector of the port of Wiscasset, to recover for the enrollment and license of the schr. Palo Alto.

The writ and pleadings may be referred to.

The plaintiff, on July 15, 1847, was the owner of the vessel, and of the cargo then on board; she was enrolled and licensed for the fishery; and was, on that day, seized by the collector of the district of Wiscasset, to whom her papers were surrendered; she was subsequently libeled, as forfeited; the forfeiture was confessed by the plaintiff; he petitioned the secretary of the treasury of the United States, to have the forfeiture remitted; a *remittitur* of the forfeiture was forwarded to the district attorney, and was filed in court; the secretary attempted to recall the same; but his right to do so was resisted, and a decision was made in the District Court of the United States, that the remission of the forfeiture was effectual, and could not be recalled; an appeal was claimed in behalf of the United States, to the Circuit Court of the United

States, and the judgment of the District Court was affirmed. While these proceedings were pending, a petition having been filed by the plaintiff, to have the property delivered to him, upon giving bond for its appraised value, it was ordered to be so delivered; and, on December 18, 1847, a precept issued from that court, directing the marshal to cause the property to be delivered to the plaintiff. On December 22, 1847, a deputy marshal made his return thereof, that he had caused the goods to be delivered to the plaintiff.

Testimony was introduced by each party tending to prove what was done and said on that occasion. There was some difference in the testimony, but the weight of the testimony clearly proved the following facts: — The plaintiff desired the deputy to deliver the property to an agent of C. C. Mitchell & Son, of Portland, and he was informed by the deputy, that he could not do so, as his precept directed him to deliver it to the plaintiff; the collector delivered the property to the deputy, who immediately delivered it to the plaintiff, who immediately delivered it to William Beals, an agent of Mitchell & Son, in the presence of the collector. The plaintiff and Beals both declared that the property was the property of Mitchell. They then went to the office of the collector, and there the plaintiff demanded of the collector the papers of the vessel, stating that the vessel would be of no use without her papers; and he was informed by the collector, that, if the vessel was his, he could have the papers; but if, as he had stated, the vessel was Mitchell's, he could not have them; but a temporary register would be granted, if desired. A copy of the enrollment was given to the plaintiff.

On December 25, 1847, the plaintiff and Beals went to the collector's office, with an order dated 24th December, and signed C. C. Mitchell & Son, claiming the vessel as mortgagees, and directing the papers to be delivered to the plaintiff, who presented the order to the collector, and again demanded the papers, and they were refused; the collector making the same remarks, which he had made at the time of the previous demand.

The property had been mortgaged by the plaintiff to C. C. Mitchell & Son, on July 24, 1847. The mortgage was recorded on July 26, 1847, and was lodged in the custom house on October 18, 1847, where it remained during the time when the transaction before named occurred.

The vessel had remained unused for want of papers, as the plaintiff alleged.

The case was submitted to the decision of the court.

*S. Fessenden,* for the plaintiff.

Barnes was the owner as to all the world, except the Mitchells. Whatever lien they had, could be enforced only by themselves. The defendant had no right to the papers. It is not for him to object that they were under mortgage. He was ordered by the secretary of the treasury to restore them to Barnes. They belonged to him, as part of the tackle and furniture. He had never lost the general property. The order of the secretary gave him the right of immediate possession. The action of trover, then, well lies.

The counsel then discussed the rule, admeasuring the damages, in cases of trover. As the decision turned upon another point, the argument is omitted.

*Ingalls,* for the defendant.

TENNEY, J. — The laws of the United States provide, that whenever a ship or vessel, registered in conformity with the statute requirements, shall be sold wholly or in part to a citizen or citizens of the United States, the former certificate or register shall be delivered up to the collector, and by him, without delay, be transmitted to the secretary of the treasury to be canceled. And a ship or vessel so sold or transferred, shall be registered anew, by her former name, and a certificate thereof shall be granted by the collector. U. S. Laws of 1789, c. 11, § 10. Every ship or vessel shall be registered by the collector of the district in which shall be comprehended the port, to which such ship or vessel shall belong at the time of her registry; which port shall be determined to be that at or nearest to which the owner, if there be but one, or

if more than one, the husband or acting or managing owner of such ship or vessel usually resides. U. S. Laws of 1792, c. 45, § 3. When, upon a sale or transfer to a citizen or citizens of the United States, a ship or vessel is required to be registered anew, her former certificate shall be delivered up to the collector to whom application for such new registry shall be made, at the time the same shall be made, to be by him transmitted to the register of the treasury, who shall cause the same to be canceled. And in every such case of sale or transfer, there shall be some instrument of writing in the nature of a bill of sale, which shall recite at length the said certificate, otherwise the said ship or vessel shall be incapable of being so registered anew. And in every case, in which a ship or vessel is required by the statute to be registered anew, if it shall not be done, she shall not be entitled to any of the privileges or benefits of a ship or vessel of the United States. *ibid*, § 14. The same requisites, in all respects, shall be complied with, for the purpose of enrolling and licensing ships or vessels, to be employed in the coasting trade and fisheries, and for regulating the same, as are made necessary for the registering of ships and vessels by the act of 1792, c. 45; U. S. Laws of 1793, c. 52, § 2.

If the transfer of "the Palo Alto" by the plaintiff to C. C. Mitchell & Son was absolute, they residing in the district of Portland, it was necessary in order to prevent a forfeiture of all the privileges and benefits of a vessel of the United States, that a new enrollment should be made in the district of Portland, upon the surrender to the collector of that port, of the certificate of the former enrollment and license in the district of Wiscasset.

Upon the sale or transfer of a ship or vessel from one to another, it is well understood, that the certificates of registry or enrollment pass to the purchaser; and from these alone, he is enabled to cause a new registry or enrollment to be made, and proper certificates, thereupon obtained, unless they have been lost or mislaid. Consequently, in such cases, the former certificates are without value, and will secure no privileges or

benefits to the vendor, although he may be the master of the vessel after such transfer.

It is contended in defence of the action, that, from the evidence reported, the defendant was made reasonably to believe, by the plaintiff, the transfer of the vessel to C. C. Mitchell & Son was absolute at the time of the demand ; and that therefore, the refusal to deliver the papers demanded was justifiable, and was not sufficient evidence of a conversion.

It appears that the certificates in question had been surrendered to the defendant on July 15, 1847, and the reason for their being so deposited ceased on Dec. 22, 1847, when the vessel was delivered by the deputy marshal to the plaintiff, by authority of a precept then in his hands. On July 24, 1847, the plaintiff gave to C. C. Mitchell & Son a mortgage of the vessel, for the security of two notes of hand, which became payable in four months from July 10, 1847, which mortgage was duly recorded. This mortgage was deposited in the custom house, on Oct. 18, 1847, and remained there till after the demand was made for the papers. The mortgage was not foreclosed by operation of law, although there was a breach of the condition at the time of the demand. R. S. c. 125, § 30. Upon these facts alone, the defendant might have been bound to deliver the certificates upon the demand made by the plaintiff in his own behalf. But we understand from the evidence, that before the vessel was delivered by the deputy marshal to the plaintiff, the latter, in presence of the defendant, requested the delivery to be made to one Beals, who was acting as the agent of C. C. Mitchell & Son, Beals being present, and he and the plaintiff at the time asserting that the vessel was their property. The deputy marshal declined to deliver the vessel to Beals, giving as a reason, that he was directed in the precept under which he acted, to make the delivery to the plaintiff. Upon the delivery to the plaintiff, he immediately delivered the same to Beals for C. C. Mitchell & Son. The plaintiff and Beals afterwards, on the same day, went to the defendant, and at his office demanded the papers, saying that the vessel would be

of no use without them. The defendant expressed a willingness to comply with the demand, if the vessel belonged to the plaintiff; but referred to his previous statements as evidence, that he had no title, and was therefore not authorized to deliver them, and declined to do it.

Although the mortgage was not foreclosed by lapse of time, after the breach of the condition, the title of the vessel might have been absolute in the mortgagees, by an agreement between the parties to the mortgage; the mortgage continuing in the custom house was not inconsistent with such agreement. A sale and transfer of a vessel, like any other chattel, may be valid without any bill of sale or document in writing, though it may be necessary to entitle the purchaser to a new registry, giving an American character to the vessel; and the consequence of a non-registry is, that the vessel becomes a foreign vessel. *Bixby* v. *Whitney*, 8 Pick. 86; *Vinal* v. *Burrill*, 16 Pick. 401; *United States* v. *Willings*, 4 Cranch, 55; 3 Kent's Com. 5th ed. 130, 131; 1 Greenl. Ev. § 261; *Balkam* v. *Lowe*, 20 Maine, 369.

The evidence, therefore, necessary to give to C. C. Mitchell & Son the privileges and benefits of an American vessel, in the one, which they might have purchased, was not required to be known to the defendant, to justify him in retaining the papers in their behalf. Any notice which should be reasonably satisfactory, that they were really the owners, was sufficient to protect him in withholding the papers upon the demand.

The facts, which were presented to the defendant at the time of the first demand, were such evidence of an actual sale to C. C. Mitchell & Son, that he cannot be regarded as tortiously refusing to surrender the papers. It is not pretended, that the papers were called for, with the view of causing a new enrollment in another district; and that the same might be delivered up to the collector thereof. And no request was made of him of that character, by the plaintiff, as master of the vessel. The declarations of the plaintiff were full and unequivocal, that C. C. Mitchell & Son were the owners of

the vessel, and this without any qualification. His statements were confirmed by those of the acting agent of them who were declared by the plaintiff to be the owners ; this confirmation was in the presence of the plaintiff, who interposed no remark, to gainsay or restrict the effect of the assertion, that the title was, as he had previously avowed it. The representations of either or both being true, made in the presence of the defendant, the papers, if received in the condition in which they were demanded, could give him no rights, inasmuch as they could have no legitimate effect, as evidence, that the vessel was one, entitled to the privileges and benefits of vessels belonging to the United States.

On December 25th, 1847, the plaintiff went to the collector's office, accompanied by Beals, presented the order of C. C. Mitchell & Son, and demanded the papers. They were refused by the defendant.

It does not appear, that at the time the order was presented, the plaintiff claimed to have any other rights, than such as would be given by the order ; and he can have no benefit therefrom, excepting so far as it was proof that he was entitled to the papers in his own behalf. If it was a request to deliver the papers as belonging to them, and to no other, the refusal to deliver them was a wrong upon their owners and not upon their agent, sent to receive them. If the order had expressly declared or required the construction, that the signers of it had no title to the vessel, such as gave them an exclusive right to the papers, and that a delivery of them to the plaintiff as his, would interfere with none of their rights, and he had made the demand in his own name, a refusal might have created a liability. But the meaning of the order is not of such a character. It contains a request to the defendant to deliver the papers to the plaintiff, " as we wish him to continue master of said schooner, till further orders ; although she is mortgaged to us, we wish him to manage the vessel."

This shows that they professed to have the control of the vessel, and to retain the plaintiff as *master*, so long as they should choose to permit it, but to be subject to their order.

The plaintiff made use of this order, and thereby assented to the correctness of whatever was declared therein. This claim would give him no interest in the papers, further than as their agent. The reference to the mortgage, is not absolutely inconsistent with the statement of the plaintiff, that C. C. Mitchell & Son were the owners. This statement, previously made, was not retracted by the plaintiff, when it was adverted to by the defendant as a reason for his refusal to surrender the papers. The existence of the mortgage and its contents are understood to be known to the defendant before the time of this demand, and its being referred to in the order gave to the defendant no additional information, excepting, that the signers of the order asserted no other title. If this stood alone, it might be reasonable that he should conclude, that they claimed no other right, than such as the mortgage would give. But when taken in connection with other parts of the order, it was at least doubtful, whether they intended to admit, that he had any other rights than such as they had conferred upon him as their agent, to be master of the vessel and to have the management of it, for them. When in connection, there was the positive statement of the plaintiff himself, that C. C. Mitchell & Son were the owners, accompanied by the delivery by him, to their acting agent, standing unqualified by any explanation, the refusal to deliver the papers as his, is not sufficient evidence, that he was guilty of a conversion of the property as alleged in the writ.

*Plaintiff nonsuit.*