# CASES

IN THE

# SUPREME JUDICIAL COURT,

OF THE

# STATE OF MAINE.

---

WILLIAM F. CHADWICK & als., Ex'rs, versus CHARLES BAKER.

A vessel cannot have two registers at the same time.

"Permanent" and "temporary," when applied to the registers of a vessel, do not imply that they are co-existent, but successive.

Such a sale of a vessel, in whole or in part, as creates a new owner, renders her former registry inoperative and void.

Under Act of Congress of July 29, 1850, a bill of sale of a vessel, whether conditional or absolute, must be recorded in the office from which her last register issued.

ON REPORT from *Nisi Prius*, BARROWS, J., presiding.

ASSUMPSIT for money had and received, by the executors of the last will and testament of Samuel Chadwick, to recover one-quarter of the earnings of the ship "Catherine."

It was admitted that the defendant received the earnings from the ship's husband, and that a due demand for the same was made prior to the commencement of the suit.

The plaintiffs read in evidence a mortgage bill of sale of one-half of the ship from John Leavitt to Samuel Chadwick, dated Dec. 4, 1855, and recorded at custom house, Portland, Dec. 7, 1855, and custom house, Boston, October 2, 1861.

The defendant read in evidence a bill of sale of one-quarter of said ship, from John Leavitt to him, dated Dec. 4,

1855, said quarter being part of what was conveyed to Chadwick, and recorded at the custom house, Boston, Feb. 6, 1856.

The last register of the ship was issued from the custom house at Boston, Oct. 17, 1851, as appeared in each bill of sale.

In the mortgage bill of sale to the plaintiffs' testator, the said Leavitt declared himself as the " owner of one-half of ship " Catherine," of Portland, — one-quarter as per regis-ister, and one-quarter by virtue of a bill of sale to him from Samuel Chadwick, dated Dec. 4, 1855, and recorded at the custom house, Portland."

The register, as recited in the bills of sale, mentioned John Leavitt and Samuel Chadwick as each owning one-quarter of the ship.

*J. & E. M. Rand*, for the plaintiffs.

*McCobb & Kingsbury*, for the defendant.

WALTON, J. — An Act of Congress, passed July 29, 1850, declares that " no bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel of the United States, shall be valid against any person other than the grantor or mortgager, his heirs and devisees, and per-sons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance be recorded in the office of the collector of the customs *where such vessel is registered or enrolled.*" (Brightly, 833, § 44.)

Both parties claim title to the earnings of the same fourth-part of the ship *Catherine*, the plaintiffs by virtue of a mort-gage recorded in the office of the collector of the customs at Portland, and the defendant by virtue of a mortgage re-corded in the office of the collector of the customs at Bos-ton ; and the question is whether Portland or Boston was the proper place in which to record these mortgages. " *Where such vessel is registered,*" is the language of the law.

The vessel in question was first registered in Portland in

1849, and afterwards, in consequence of a partial change of owners, was registered anew in Boston in 1851. The mortgages were executed in 1855. Was Portland or Boston the proper place for recording these mortgages?

We have carefully examined the question, and our conclusion is that Boston was the proper place. We think it was there only that the vessel was legally registered when the mortgages were executed. We think the law does not contemplate, does not allow even, a plurality of registers at the same time. The registry of a vessel is in the nature of a continuing license. It secures to the owners certain privileges so long as the registry continues in force and no longer; and the registry will continue in force so long only as the legal status of the vessel remains unchanged. A sale of the vessel, in whole or in part, changes her legal status, and her former registry thereupon becomes inoperative and void. She is no longer a registered vessel, and can no longer enjoy the privileges of one, unless registered anew. And when by reason of a change of ownership a vessel is registered anew, it is her last registry only that secures to her the privileges of a registered ship; and the office where this last registry was effected, is the only place where (speaking in the present tense) the vessel can properly be said to be registered.

The case is not unlike that of a vessel which is insured upon condition that any change of ownership shall render the policy void; and a change of ownership having taken place, is insured anew at another office. Speaking in the present tense, would any one think of saying that the vessel "is insured " in any other than the office where her last insurance was effected? So with respect to the registry of a vessel. The law expressly declares that such a sale as creates a new owner, renders her former registry inoperative and void; that unless registered anew, " she shall cease to be deemed a ship or vessel of the United States." If she is registered anew, for such a cause, can it be said that she " is registered" in any other than the office where her last

registry was effected? We think not. We think that when the Act of 1850 names the office of the collector of the customs "*where such vessel is registered*" as the proper place for recording a mortgage, the office referred to is the one where her last registry was effected.

None but citizens of the United States are entitled to have their vessels registered. Nor can a vessel be registered until proof of the citizenship of all her owners is placed on record. The reason, therefore, why such a sale of any part of a vessel as creates a new owner renders her former registry inoperative and void is obvious. The record no longer establishes the fact that all her owners are citizens of the United States. It contains neither the name nor the evidence of the citizenship of the new owner. For aught that appears he may be a foreigner. If so, the vessel is not only unregistered, but denationalized, so as to render her incapable of being registered. If the sale is to an American citizen, it does not denationalize her, it only unregisters her, and she may be registered anew upon proof that the new owner is a citizen of the United States. If a vessel is sold at sea to an American citizen, her privileges are not thereby forfeited, "provided, that all the requisites of law in order to the registry of ships or vessels, shall be complied with and a new certificate of registry obtained for such ship or vessel within three days from the time at which the master or other person having the charge or command of such ship or vessel, is required to make his final report upon her first arrival afterwards." (Act March 2, 1803, § 3.) Except the brief extension of the privileges of her former registry here provided for, the sale of a vessel, in whole or in part, instantly unregisters her; and when she has been registered anew, such vessel cannot properly be said to have two registers; it is the fact that her former registry has become inoperative and void, that makes a new registry necessary. (Act Dec. 31, 1792, § 14.)

This view of the law is confirmed by the fact that when a vessel is sold and thereupon registered anew, or sold with-

Chadwick *v.* Baker.

out being registered anew, her former certificate of registry is to be given up and cancelled. (Act Dec. 31, 1792, § 14.) Also the bond given at the time of granting such register is to be cancelled. (Same Act, § 18.)

Vessels may be registered by the collector of the port where at the time the registry is effected such vessels may be. If a vessel is registered at a port other than that to which she belongs, and she afterwards arrives at her home port, she is to be there registered anew, and her former certificate given up. Hence it is the practice to write upon a certificate obtained at a port other than that to which the vessel belongs, the word "temporary," probably to remind those having charge of the vessel of the necessity of surrendering it and obtaining a new one, when, if ever, the vessel arrives at her home port. It is this practice which seems to have originated the idea that a vessel may be registered in two places at the same time; that her registry at one of these places is permanent and at the other temporary. But such a distinction is neither sanctioned nor recognized in the registry laws; and if it was it would not authorize the conclusion that a vessel has two registers at the same time; for the word "temporary" implies that for a brief season at least the object to which it applies is to serve in place of that which is afterwards to take its place. The words permanent and temporary do not imply co-existences, but successive ones. That which is permanent *follows* that which is temporary. The idea, therefore, that because a registry at one place may be called temporary, and a registry at another permanent, the vessel is therefore registered in two places at the same time, seems to us unwarranted. The phrase "temporary register," fairly construed, implies that it is to be followed by another more permanent, but not that the two are co-existent.

The whole argument for the plaintiffs is based upon the assumption that a vessel is always registered at her home port, and that her registry at any other port is but temporary. In other words, that a vessel may have two registries

at the same time, the one permanent and the other temporary. Hence it is argued, that inasmuch as a vessel is always permanently registered at her home port, and all other registries are but temporary, that the notice intended to be given by the recording of mortgages, will be most effectually accomplished by requiring them to be recorded in the collector's office of the home port, although that may not be the office in which the vessel was *last* registered.

We have already noticed what we regard as one of the fallacies of this argument; namely, the assumption that a vessel may have two registries at the same time. But we think it is also defective in another respect. It assumes that a vessel is always registered at her home port, which we think is not true. It not only may happen, but frequently does happen that a vessel is not registered at her home port.

Take the case provided for in § 11 of the registry Act of 1792. It is there provided that where citizens of the United States become the owners of a vessel entitled to be registered, such vessel being within any district other than that in which they usually reside, such vessel shall be entitled to be registered where she may be. If a vessel thus registered afterwards arrives at her home port, she is to be there registered anew. But suppose she is employed in foreign commerce for many years, and is finally worn out or lost without ever being brought into her home port. If, while thus employed, the vessel is mortgaged, where can the mortgage be legally recorded? The language of the law is, "*where such vessel is registered.*" This cannot refer to her home port, for she has never been there registered; and must refer to the port where she obtained the register under which she has been navigated. Many other cases can be suggested in which a vessel might be mortgaged, and it might be important to have the mortgage recorded, and yet a compliance with the law would be impossible, if the home port of the vessel is the only place where such a record can legally be made. The propositions, therefore,

that " every vessel regularly documented, is registered or enrolled at the port of the district where she belongs, and that this remark is correct, although she may be sailing under a temporary register or enrollment granted at the office of the collector of some other port," cannot be maintained. We think it is clearly demonstrable that a vessel may be regularly documented, so as to secure all the advantages of a registered ship, and yet never be registered at her home port; and we have no doubt that many such cases actually occur.

In support of the proposition that a vessel is always permanently registered or enrolled at her home port, section 3 of the Act of 1792 is cited. That section does not support the proposition. It declares that vessels shall be registered at their home port " *except as is hereinafter provided,*" and the cases thereinafter provided for, reduce the law as a whole to simply this, that vessels may be registered at any port, where, at the time such registry is effected, they may happen to be. If they are then at their home port, they must be there registered. If at some other port, then they are to be there registered, and not at their home port, except that if they are afterwards brought into their home port, then they are to be there registered anew. If, however, they are never brought into their home port, then they will never be registered there.

Nor are we satisfied that the argument *ab inconvenienti* is in favor of the home port. Every bill of sale of a vessel, whether absolute or conditional, contains a recital at length of the ship's last register, otherwise she cannot be registered anew. (Act of Dec. 31, 1792, § 14.) The mortgages of the ship Catherine, put into this case, both contain such a recital. The omission of such a recital would be attended with such serious inconvenience, that in practice such a case will never be likely to happen. All therefore a mortgagee has to do is to look at his mortgage to ascertain the office in which the vessel was last registered; or before taking his mortgage, look at the register, a copy of which is to be in-

serted in his mortgage. This will at once direct him to the proper office to look for incumbrances, and to the proper office in which to record his own mortgage. Section *three* of the Act of 1850, (Brightly, 834, § 46,) requires collectors to give certificates, setting forth the names of the owners of any vessel registered or enrolled, the parts or proportions owned by each, and also the material facts of any existing bill of sale, *mortgage*, &c., upon such vessel, "*recorded since the issuing of the last register or enrollment.*" We think this language clearly implies that mortgages are to be recorded in the office from which the ship's *last* register issued, otherwise a compliance with the provision would be impossible; and we are unable to see why this office cannot be as readily and as conveniently ascertained as the office of the home port of the vessel. We think, therefore, that the argument drawn from the supposed inconvenience that would be likely to attend a search for the office in which the vessel was last registered, is without foundation. We think it can be more conveniently and certainly ascertained than the office of the home port of a vessel; for the home port of a vessel, (which means nothing more than the port at or nearest to which the owner, if there be but one, or if more than one, the husband or acting and managing owner, usually resides,) is not always a matter of record, and is liable to be changed every month in the year. (Act Dec. 31, 1792, § 3.)

Our conclusion is that such a sale of a vessel, in whole or in part, as creates a new owner, renders her former registry inoperative and void; and that it is the fact that her former registry is thus rendered inoperative and void, that makes a new registry necessary; that when registered anew for such a cause, the vessel cannot be said to be legally registered (speaking in the present tense) except at the office where her last registry was effected; and that the Act of Congress requiring mortgages, &c., to be recorded in the office of the collector of the customs "*where such vessel is registered or enrolled,*" refers to the office where the vessel was *last* registered or enrolled.

Chadwick *v.* Baker.

This conclusion is in accordance with the decision of the Supreme Court of Massachusetts in *Potter* v. *Irish*, 10 Gray, 416, in which the question underwent a very careful and thorough examination. It is in conflict with an opinion of Mr. Justice CLIFFORD, published in the Law Reporter for November, 1862, page 22. The question being upon the construction of a United States statute, the plaintiffs' counsel contends that a decision by a United States Court should be held paramount. A decision by the Supreme Court of the United States, should undoubtedly be regarded as conclusive upon the question. The decision of a single Judge of that Court, we do not regard as conclusive, and have therefore felt it to be our duty to examine the question for ourselves, and to be governed by the result to which such examination should lead us.

The mortgage under which the plaintiffs claim, not having been legally recorded till after the mortgage under which the defendant claims was properly recorded, the defendant's title to the earnings of the quarter of the vessel in dispute is superior to that of the plaintiffs.

*Judgment for defendant.*

APPLETON, C. J., KENT, DICKERSON and DANFORTH, JJ. concurred.

BARROWS, J., did not concur.