COLLIER ADVERTISING SERVICE, Inc., v. HUDSON RIVER DAY LINE.

THE HENDRICK HUDSON.

THE ALEXANDER HAMILTON.

THE CHAUNCEY M. DEPEW.

THE ROBERT FULTON.

THE DE WITT CLINTON.

THE ALBANY.

THE PETER STUYVESANT.

BANKERS TRUST CO. v. HUDSON RIVER DAY LINE et al.

District Court, S. D. New York.
Jan. 17, 1936.

336

White & Case and Duncan & Mount, all of New York City, for Bankers Trust Co., as trustee.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for Tietjen & Lang Dry Dock Co.

Rogers & Whitaker, of New York City (Spier Whitaker, of New York City, of counsel), for United Dry Docks, Inc.

PATTERSON, District Judge.

A creditors' bill was filed against the Hudson River Day Line on January 11, 1933. A receiver was appointed. On April 13, 1933, Bankers Trust Company, as trustee under a mortgage covering seven steamships owned by the Day Line, filed libel in rem on the admiralty side to foreclose the mortgage. Two days later the trust company filed bill on the equity side for foreclosure on nonmaritime property covered by the same mortgage. The three suits were consolidated, without prejudice to substantive rights. The matters raised by the two foreclosure suits were referred to Randolph Harris as commissioner and special master. Several alleged lienors appeared before the commissioner, claiming maritime liens on some of the steamships. Two of them, United Dry Docks, Incorporated, and Tietjen & Lang Dry Dock Company, asserted liens for repairs to several vessels, and the contest became one for priority between the lienors and the trustee for bondholders. The lienors insisted that their liens were prior to the mortgage, on the ground that the mortgage was subject to various infirmities and not entitled to a preferred status. The commissioner has reported that maritime liens have been established; that as to all the steamships except the Chauncey M. Depew the mortgage is prior to the maritime liens; that as to the Chauncey M. Depew the mortgage is inferior to the maritime liens. The dry dock companies have filed exceptions to the commissioner's rulings in general. Bankers Trust Company as trustee under the mortgage has filed an exception to his ruling in respect of the Chauncey M. Depew.

It appears that in 1927 the Day Line issued $1,500,000 first mortgage bonds. The bonds were sold to the public and are now outstanding to the extent of $1,050,000. They were secured by a so-called preferred mortgage running to Bankers Trust Company as trustee and covering seven steamships and certain parcels of real estate. The mortgage was dated as of March 1, 1927, was executed on March 23, 1927, and was recorded in the office of the Collector of Customs of the Port of New York on March 24, 1927. At that time one of the steamships, the Peter Stuyvesant, was still in course of construction. A supplemental mortgage covering that vessel after completion and delivery was executed on May 31, 1927, and was recorded on June 3, 1927. The contents of the mortgage or supplemental mortgage were indorsed on the documents of the vessels involved.

The maritime liens proved against the vessels were for repairs and supplies and arose later than 1927. Other facts will be mentioned in discussing the contentions advanced. As already pointed out, the commissioner was of opinion that the mort-

gage was superior to the maritime liens as to all vessels except the Chauncey M. Depew, and that as to that vessel the maritime liens were prior in right to the mortgage.

If the mortgage is a preferred one within the scope of the Ship Mortgage Act (46 U.S.C.A., c. 25, § 911 et seq.), as to all vessels, its priority is established. The Ship Mortgage Act (section 921) provides in substance that no mortgage on a vessel shall be valid until recorded in the office of the collector of the port of documentation, except as to the mortgagor and persons with actual notice; that (section 922) a mortgage on a vessel of the United States shall have the status of a preferred mortgage provided it is indorsed on the vessel's documents, is recorded in the collector's office at the home port, and is accompanied by appropriate affidavit of the mortgagor, and provided the mortgagee is a citizen of the United States; that (section 953) a preferred mortgage shall have priority over all claims against the vessel except "preferred maritime liens" (these being liens prior in time to the recording and indorsement of the preferred mortgage, and also liens for tort damages, for wages, for general average and for salvage), and expenses, fees, and costs allowed on foreclosure. The act is operative only to a mortgage on a "vessel of the United States," which according to definition in the act (section 911) means a "vessel documented under the laws of the United States." The latter phrase is in turn defined as a vessel "registered or enrolled or licensed under the laws of the United States."

It is equally plain that if the mortgage in question is not within the protection of the Ship Mortgage Act as to any particular vessel, it is subordinate to liens for repairs and supplies against that vessel; for in such case the mortgage is not a maritime contract at all, constitutes no maritime lien, and is inferior to all maritime liens. The J. E. Rumbell, 148 U.S. 1, 13 S.Ct. 498, 37 L.Ed. 345; Morse Dry Dock & Repair Co. v. The Northern Star, 271 U.S. 552, 46 S.Ct. 589, 70 L.Ed. 1082. The issue then is whether the mortgage is entitled to the preferred status given to mortgages under the act. The design of the mortgagor was to conform to the Ship Mortgage Act and to make a mortgage that would have the incidents of a preferred mortgage under the act. The design failed, so say the maritime lienors, because of infirmities in the documenting of several of the vessels and because of other defects.

1. All the vessels except the Peter Stuyvesant were enrolled and licensed in the office of the collector of the port of New York, which was their home port, prior to the time when the mortgage was executed and recorded. The Peter Stuyvesant was so enrolled and licensed prior to the execution and recording of the supplemental mortgage. The vessels were enrolled as the property of the Day Line. On the face of the record, therefore, all of them were documented and were vessels of the United States. In the case of five vessels, however, the preliminary oath on ownership was made by the vice president of the Day Line. These five vessels were the Hendrick Hudson, Robert Fulton, Albany, Peter Stuyvesant, and Chauncey M. Depew. The pertinent statute is section 4314 of the Revised Statutes (46 U.S.C.A. § 254), which provides that prior to the grant of enrollment and license for any vessel owned by an incorporated company, "the president or secretary of such company, or any other officer or agent thereof, duly authorized by said company in writing, attested by the corporate seal thereof, to act in its behalf," shall make oath to the ownership of the vessel.

The argument is that there was noncompliance with the oath act, because the oath was by the vice president and there was no proof of authority in writing over the corporate seal; from which it is said to follow that the enrollment was void and ineffective. The premise may be granted, but the conclusion cannot be accepted. The oath was irregular, but the United States, acting by the collector of customs, its proper officer, accepted it as sufficient and did enroll each of these vessels. The vessels were enrolled and licensed in the proper office, as the property of the mortgagor, and the enrollments are immune from collateral attack based on minor defects in papers preliminary to enrollment. It is pressing technicality too far to say that because of the trifling irregularity in the oath the vessels lost their status as vessels of the United States and the bondholders lost their priority.

The authorities brought up in support of the argument do not sustain it. In The Lincoln Land, 295 F. 358 (D.C.Mass.), and The Susana, 2 F.(2d) 410 (C.C.A. 4), a registered vessel had been sold, and the purchaser had neglected to register it anew. By express provision (Rev.St. § 4170 [46 U.S.C.A. § 39]), the vessel in such case ceases "to be deemed a vessel of the Unit-

ed States"; and it was held that a mortgage made by the new owner was not capable of being a preferred mortgage under the Ship Mortgage Act. In these cases the old documents were spent, and there was an utter failure on the part of the owner to document. In The Fort Orange, 5 F.Supp. 833 (D.C.N.Y.), Judge Knox held that the oath act had been complied with. The effect of an irregularity in the oath was not considered by him. Central Vermont Transportation Co. v. Durning, 294 U.S. 33, 55 S. Ct. 306, 79 L.Ed. 741, is quite a different case. No question of enrollment was presented. The vessels there were found to be foreign-owned, and that fact alone rendered the merchandise carried between points in the United States subject to forfeiture.

The object of Congress in enacting the Ship Mortgage Act was to encourage the investment of capital in American shipping, to improve the security of investments by way of mortgage on vessels, and to promote public confidence in such investments. Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176. That policy would be defeated if an attack based on grounds so inconsequential were to prevail.

The commissioner held that old enrollments on oath of the president in the case of the Hendrick Hudson, Robert Fulton, and Albany, though surrendered in fact, had not been surrendered in law and sufficed to save the documents of these vessels. He also held that in the case of the Peter Stuyvesant there was a paper which was the equivalent of authority in writing, attested by the corporate seal, for the vice president to make oath for the company. It is unnecessary to pass on the soundness of these propositions, in view of my conclusion that the five vessels were enrolled and licensed under the laws of the United States despite the fact that the ownership oath was by the vice president and was without specific written authority attested by the corporate seal.

[3] 2. The enrollment of each vessel was in the corporate name. The maritime lienors rest on section 4313 of the Revised Statutes (46 U.S.C.A. § 253), to the effect that "enrollments and licenses for vessels owned by any incorporated company may be issued in the name of the president or secretary of such company." The statute says "may," not "shall." It is permissive only. The Fort Orange, supra. There was no defect in documentation because of the name in which the documents were issued.

3. A third objection runs only to the Chauncey M. Depew. This vessel was formerly the Rangeley, owned by another. The vessel was purchased by the Day Line by bill of sale dated April 27, 1925. The Commissioner of Navigation gave permission on May 5th to change her name to the Chauncey M. Depew. Enrollment of the vessel in the new name was granted to the Day Line on May 27th. The maritime lienors assert that the vessel lost her status as a vessel of the United States because of section 4170 of the Revised Statutes (46 U.S.C.A. § 39), to the effect that any registered vessel, on sale to a citizen, must be registered anew "by her former name," on pain of ceasing to be a vessel of the United States. I think it evident that this section is not controlling where the vessel in question is an enrolled and licensed one, rather than a registered one. However that may be, the change of name in this case was authorized by the commissioner, enrollment under the new name was thereafter granted to the new owner, and the enrollment is not to be taken as void on collateral attack by third parties.

4. The mortgage and supplemental mortgage carried as exhibits copies of the enrollment and license of each vessel issued in consolidated form pursuant to the Act of April 24, 1906, § 1, as amended (46 U.S. C.A. § 260); but copies of the annual renewals of license were not attached. The criticism here is based on the statute referred to in the preceding point (46 U.S.C.A. § 39), providing for new registry on sale or transfer of a registered vessel and directing that "in every such case of sale or transfer, there shall be some instrument of writing, in the nature of a bill of sale, which shall recite, at length, the certificate; otherwise the vessel shall be incapable of being so registered anew." It is evident, as already observed, that this act applies only to vessels that are registered, not to vessels enrolled and licensed for coastwise trade. Moreover, as Judge Knox pointed out in The Fort Orange, supra, and as the context of the clause shows, the requirement of full recital of certificate has to do with sales and not with mortgages. Finally, in the case at bar there was recital at length of the enrollment and license. The point is without merit.

5. A mortgage is not a preferred one unless the mortgagee is a citizen of the United States. 46 U.S.C.A. § 922. In the case of a mortgage involving trust deed and bond

issue, the necessary citizenship is that of the trustee (46 U.S.C.A. § 911), and in the case of a corporation the requirement is that incorporation be domestic; that the president and managing directors and at least 75 per cent. of the stockholders be citizens (46 U.S.C.A. § 802). It is argued that proof of citizenship of the mortgagee was lacking.

It was proved that Bankers Trust Company is a corporation organized under New York law, and that its president and all the directors were citizens. As for the stockholders there were 200,000 shares outstanding, held by some 3,660 persons. Of the 200,000 shares more than 96 per cent. was held by persons with addresses within the United States. There was no direct proof of the citizenship of stockholders, but from the proof of their addresses it is a fair inference that persons holding more than 75 per cent. of the stock were citizens. I am of opinion that the proof sufficed to show that the mortgagee was a citizen of the United States.

6. It is said that the commissioner erred in not apportioning the mortgage lien between nonmaritime property and maritime property, also in not apportioning among the vessels themselves. There was no error in this regard. The mortgage for its full unpaid amount is a lien on each piece of property covered by it. The fact that discharge values were set in the mortgage for maritime property and nonmaritime property, as required by 46 U.S.C.A. § 922, the Ship Mortgage Act, and the further fact that discharge values were fixed for the vessels separately, as authorized but not required by the same section, do not convert the single mortgage into independent mortgages on the several items of property. Nor is it of moment that the aggregate of the discharge values is far in excess of the amount of the mortgage. Any questions relative to marshalling are premature.

7. The sale of the Albany for $25,000 by order of court in the course of the foreclosure proceeding was not beyond the power of the court. The vessel was sold free of lien, but the proceeds of sale were substituted for the vessel. The argument that this worked a satisfaction of the mortgage to the extent of $257,000, the discharge figure placed on the Albany in the mortgage, cannot be supported.

The other exceptions filed by the maritime lienors have been considered and found untenable. The mortgage is a valid pre-ferred mortgage under the Ship Mortgage Act as to all the vessels. As such it is superior to the maritime liens later incurred for repairs and supplies. The exceptions filed by the maritime lienors are overruled. The exception filed by Bankers Trust Company relative to the Chauncey M. Depew is sustained. The commissioner's report will be modified accordingly, and a decree in conformity to this opinion will be entered.