THE ENOS.

MAXWELL v. SEELY et al. (HALL–SCOTT MOTOR CO., Interveners).

No. 14005.

District Court, W. D. Washington, N. D.

Aug. 26, 1938.

Calhoun Shorts, of Seattle, Wash., for J. W. Maxwell, Jr., libelant.

Bogle, Bogle & Gates, of Seattle, Wash., and Holland, for the Enos and Hall-Scott Motor Co.

Herbert O. Landon, of Seattle, Wash., for Nordby Supply Co. and Axel Victor.

G. E. Steiner, of Seattle, Wash., for Martin Budinich and fishing vessel owners and Marine Ways.

Little & Leader, of Seattle, Wash., for Union Oil Co.

Winter S. Martin and Frank E. Boyle, both of Seattle, Wash., for J. L. Anderson.

Lloyd Holtz, of Seattle, Wash., for Aksel Larson.

W. H. Abbott, of Bellingham, Wash., for Geo. Wrang.

NETERER, District Judge.

The libellant seeks to foreclose a preferred mortgage on the respondent ship "Enos"; and Anderson seeks to impress a Seaman's lien; and the intervening libellants seek to impress liens for labor and supplies, etc., furnished to the "Enos". The issue to be determined is, has the mortgage preference; and has Anderson a seaman's lien?

It is shown that on January 11th, 1937, George Wrang sold the "Enos" to one Seely and executed and delivered a Bill of Sale for the vessel for a consideration of $700 paid to him by Seely, who had obtained the money from the libellant Maxwell, the same to be secured by preferred mortgage on the vessel. On January 16th, 1937, following pursuant to said agreement, Seely executed the mortgage in issue on said vessel for said sum. On January 15th, 1937, the new owner Seely, filed his application for license with the Collector of Customs. On January 18th, following, a permanent license was issued by the Collector of Customs at Seattle to Seely, and the former permanent registry was surrendered. The Bill of Sale, and mortgage together with the necessary affidavit, was filed in the office of the Collector of Customs at the Port of Seattle, the home Port of the vessel on January 16th, 1937.

The mortgage was thereafter endorsed on the outstanding documents of the vessel, and the Collector of Customs delivered two certified copies of the mortgage to the mortgagor, who retained one on board of the vessel, and caused the same to be exhibited to any interested party.

The intervening claims have been established for the amounts claimed, and it is stipulated that all of the liens are of equal rank, save the claim of the libellant for a preferred mortgage, and of Anderson's for a seaman's lien.

The testimony shows that Anderson was employed by Capt. Seely, the owner, on the

12th day of April, 1937. He testifies that he was employed as engineer on the fishing vessel, to fish on the usual "lay" in the Alaskan waters, for the fishing season which began July, 1937. The vessel needed remodeling and he at the instance of the owner, began to work on the vessel doing work as a mechanic, carpenter and handy man in reconstructing the vessel; he also tuned up the engine, etc., preparatory for the voyage. It was agreed he should give 15 days work gratis, for this service. No charge is made for 15 days so devoted. He says, that the carpenter work was done by a carpenter, and that he and Capt. Seely assisted the carpenter in the work. Capt. Seely has since died, and hence his understanding is not available.

 Anderson says he worked 77 days, 8 hours a day, and was to receive 75¢ per hour. It is quite clear that when the intervening libellant entered upon the work April 12th, 1937, the vessel was not in condition for the fishing voyage, nor was a voyage contemplated until July, nor was the engagement for the instant work, nor the work done within the meaning of the Seaman's rule. Pacific American Fisheries v. Hoof, 9 Cir., 291 F. 306, at page 311; Tit. 46 U.S.C.A. § 713; The Sea Lark, D.C., 14 F.2d 201; The Buene Ventura, D.C., 243 F. 797; The Baron Napier, 4 Cir., 249 F. 126.

The crew for this voyage was engaged a few days before July 9th, 1937, the day the articles were signed and the voyage entered upon. There are two distinct zones, shown in relation to intervening libellant Anderson employment: (1) From April 12th, 1937, to July 9th, 1937, in which he was engaged as a mechanic, carpenter and handy man to reconstruct the vessel; except for the 15 days he gave for cleaning and tuning the engine, etc., which was gratuitous, so far as it concerns this claim; (2) from July 9th, as a member of the crew for the fishing venture. No claim is made for compensation for the fishing venture.

The testimony is very unsatisfactory. He kept no memoranda of his time. Anderson says he worked 77 days, 8 hours a day; that all of the carpenter work was done by the carpenter, Capt. Seely and Anderson. The vessel is 23 gross tons, 15 tons net, 41 feet in length; it was not dry docked. (A new pilot house was constructed and other repairs made.) The engine was put in order. There is no evidence what the work was on the engine, or putting the finished vessel in order for the voyage.

If intervening libellant was a watchman, of which there is no evidence, he would not be within the Seaman's rule as stated by the 9th Circuit Court of Appeals in Pacific American Fisheries v. Hoof, 291 F. 306, at page 311, supra. His presence on the vessel most assuredly was not to perform a seaman's service; nor has he a Seaman's lien as a mechanic or handy man. He is not within the definition of Seaman as given in Tit. 46 U.S.C.A. § 713; The Sea Lark, D.C., 14 F.2d 201; The Buene Ventura, D. C., 243 F. 797; The Baron Napier, 4 Cir., 249 F. 126, supra.

 The mortgage is a creature of the statute and all of the necessary pre-requisite must be fulfilled. The Court's opinion in United States v. Willings, 4 Cranch 48, 2 L.Ed. 546, as authority here, is set at rest by Sec. 35, Tit. 46 U.S.C.A. and clarifies, if need be, Sec. 921, Tit. 46 U.S.C.A. as to the facts here.

 The mortgage act is operative only, on a mortgage, on a "vessel of the United States" the owners of which have complied with the law. A "vessel of the United States" is documented under the laws of the U.S.Tit. 46, U.S.C.A. Sec. 221. The "Enos" had a permanent registry #209 and thus was a "vessel of the United States" before the sale to Seely. The sale of the "Enos" January 11th, 1937, cancelled registry #209, and her status of a "vessel of the United States" was lost. Chadwick v. Baker, 54 Me. 9. Section 961, Tit. 46 U.S.C.A., supra, says: "The documents of a vessel of the United States covered by a preferred mortgage may not be surrendered * * * without the approval of the board." The surrender of the document of the old registry, was not approved by the Board, no request being made; and it is contended by the intervening libellants that the priority of the mortgage cannot obtain. This Sec. has no application since no mortgage was on the vessel, when the Bill of Sale was made, and the vessel delivered by Wrang owner, of registry #209 to Seely, the purchaser, and who surrendered the old registry, and secured the new and thereby complied with Sec. 39, Tit. 46 U.S.C.A.

 It is obvious that the old registry being cancelled on sale and delivery of the vessel, January 11th, 1937 (see Sec. 953, Tit. 46 U.S.C.A.), Chadwick v. Baker, supra, the

390

vessel ceased to be a "vessel of the United States" and no preferred mortgage could be made on January 16th, 1937, following, unless the vessel acquired that status before the mortgage was made. Section 921, Tit. 46 U.S.C.A., and Sec. 953, Tit. 46 U.S.C.A. only give status to "vessels of the United States." Like facts were so held in The Lincoln Land, D.C., 295 F. 358. The other cases cited, The Susana, 4 Cir., 2 F.2d 410; Collier Advertising Service v. Hudson, etc., Line, D.C., 14 F.Supp. 335, are on a different state of facts as to vital parts. Unless the facts in the instant case distinguish it, the mortgage has no preference. While the mortgage was given 5 days after the "Enos" had lost status as a "United States vessel" by the sale and delivery. The application for a new license was made in due and ample form on the 15th day of January, 1937, one day before the execution of the Mortgage and the license was duly issued upon this application on the 18th day of January, 1937, following. The effective date of the license by all authority is not the date of the clerical act of issuing, but the date of the application. The Bill of Sale and the mortgage were filed on the 16th day of January, 1937, and the court must presume they were filed in the order of the intent of the parties to make legal the acts in carrying forward their agreement. The law presumes that where two inferences may be drawn from acts, one legal and in harmony with previous agreement and the other illegal or out of harmony with such agreement, that the parties acted legally and in harmony with their prior agreement. The conclusion is therefore inevitable that the "Enos" became a "vessel of the United States" on the 15th day of January, 1937, and the mortgage made on the 16th day of January, 1937, is valid and has priority. The same conclusion was announced on a somewhat similar state of facts but a different reason given in The Fort Orange, D.C., 5 F.Supp. 833. It may also be said that none of the intervening claims began prior to the effective date of the mortgage, which is to secure the money for the purchase of the vessel. While admiralty is not a court of Equity, it does administer admiralty on equitable principles, and to deny priority to this purchase money mortgage upon the facts would be most inequitable.

The Anderson claim as a seaman may not rank the mortgage or other intervening claims. His claim will be allowed and will have equal rank with the other intervening claimants. This memorandum together with the stipulation filed will be the Court's Findings and Conclusions.