MARYLAND NATIONAL
BANK, Plaintiff,

v.

The YACHT ESCAPE II, her engines,
masts, anchors, cables, etc., in rem and
Theodore L. Puttick and Jerry Gagliano
d/b/a Marine Basin Marina, in person-
am, Defendants.

No. 91 CV 1690 (DRH).

United States District Court,
E.D. New York.

March 5, 1993.

Waesche, Sheinbaum & O'Regan, P.C. by
John R. Foster, New York City, for plaintiff
Maryland Nat. Bank.

Zaslosky, Marx & Nelson, New York City,
for defendant Jerry Gagliano.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

By Memorandum and Order dated Decem-
ber 28, 1992,[1] 1992 WL 403397, the Court
ordered the parties to submit supplemental
memoranda of law on certain issues implicat-
ed by the above-referenced case. Such brief-
ing was required in order for the Court to
determine the sole remaining issue in this
action: whether, by virtue of a preferred
mortgage lien pursuant to the Ship Mortgage
Act, 46 U.S.C. § 31301 *et seq.* (the "SMA"),
plaintiff has priority over the proceeds of the
sale of the defendant vessel, or whether Jer-
ry Gagliano ("defendant"), the only other
claimant, is entitled to the funds. Both par-
ties agree that if the Court determines that
plaintiff has a preferred mortgage lien, plain-
tiff is the rightful recipient of the funds.
However, defendant argues that because
there is a deficiency in the acknowledgement
of the mortgage, the mortgage does not com-
ply with the mandate of the SMA.

The Court ordered the parties to brief two
issues: first, whether New York or federal
law applies to the acknowledgement; and
second, whether a deficiency in the acknowl-
edgement necessarily precludes a finding
that the mortgage is preferred. *See* 46
U.S.C. § 31322. The Court is in receipt of
the parties' submissions and has reviewed
them. For the reasons stated below, the
Court holds that plaintiff is entitled to priori-
ty over the remaining funds from the sale of
the defendant yacht.

## DISCUSSION

### I.

A preferred mortgage is one that has been
filed "in substantial compliance with section
31321" of the SMA. *See* 46 U.S.C.
§ 31322(a)(1)(B). Section 31321 provides, *in-
ter alia*, that a preferred mortgage be

1. Familiarity with this Memorandum and Order    is assumed.

"signed and acknowledged". Section 31301(1) defines "acknowledged" as "making (A) an acknowledgement or notarization before a notary public or other official authorized by the law of the United States or a State to take acknowledgements of deeds".

■ As stated, one issue the Court must address is whether state or federal law applies to the acknowledgement in this case. Under New York Real Property Law ("NYRPL") § 309, an acknowledgement must be made by an officer or attorney in fact of the corporate mortgagor. In contrast, under federal law, the purpose of an acknowledgement is simply to authenticate the mortgage for the record. *See Moore v. Simonds*, 100 U.S. 145, 147, 25 L.Ed. 590 (1879). Thus, the propriety of the acknowledgement under federal law is not directly dependent on a particular individual making the acknowledgement.

Defendant argues that New York law should apply because section 31301(1) provides for notarizations before an official authorized by state law, and in this case, the mortgage indicated that the acknowledgement was to "conform to the requirements of the law of the locality where made." The mortgage at issue in this action was acknowledged by a "specially authorized agent" for the mortgagor. Because in defendant's view, the mortgage does not comply with NYRPL § 309, he maintains that it is not in substantial compliance with section 31321. Plaintiff counters that because the legislative intent of the SMA reflects a desire for national uniformity, the Court should look to federal law in determining whether the mortgage was properly acknowledged.[2] Plaintiff also argues that in any case, it has substantially complied with the mandate of the SMA.

## II.

Because the SMA only came into effect on January 1, 1989, there is relatively little judicial interpretation of it. However, the SMA has its roots in the Ship Mortgage Act of 1920, 41 Stat. 1000 (the "Act"). Like the SMA, the Act provided that a lender under a

"preferred ship mortgage" would have priority over certain "preferred maritime liens". 46 U.S.C. § 953 (1975). Moreover, the courts interpreted the Act's requirements under a "substantial compliance" standard. Thus, the Court looks to the judicial interpretation of the Act for guidance.

■ The case law relating to the Act emphasizes the need for uniformity in the application of the Act and the resulting importance of applying federal law. For example, in *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 218 (1972), the Fifth Circuit interpreted the legislative history of the Act and held that "[i]t is clear that Congress intended that the ready availability of credit to support interstate commerce should not be impeded by parochial limitations and that the Act would *wholly and completely supersede state law and practice in every respect.*" *Id.* at 818 (emphasis added).

Similarly, in *Mastan Co. v. Steinberg*, 418 F.2d 177 (3d Cir.1969), *cert. denied*, 397 U.S. 1009, 90 S.Ct. 1238, 25 L.Ed.2d 422 (1970), the Third Circuit, facing a creditor's attempt to use New York state law to destroy the mortgagee's priority, held that "it seems clear that to engraft the various nuances of state law onto federal legislation would introduce an undesirable lack of uniformity in the interpretation of congressional enactments. In the present case, it would condition the validity of ship mortgages on the idiosyncracies of local law rather than their conformity to national interests." *Id.* at 179.

Finally, the legislative history of the Act indicates that its "primary purpose" was "to induce private capital to invest in shipping", *Custom Fuel Services v. Lombas Indus.*, 805 F.2d 561, 568 (5th Cir.1986), by creating " 'certainty in financing' " vessels in the United States. *In re Alberto*, 823 F.2d 712, 713 (3d Cir.1987) (quoting H.R.Rep. No. 1116, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 4231, 4232). Such certainty could not be attained if vessel

---

2. It is apparently not disputed that if federal law applies, the acknowledgement may be deemed proper.

mortgages were subject to a myriad of different standards depending on the state in which the execution of the mortgage took place.

### III.

As stated, the SMA requires that an acknowledgement or notarization be made "before a notary public or other official authorized by the law of the United States or a State to take acknowledgements of deeds". 46 U.S.C. § 31301(1). Thus, contrary to defendant's assertion, on its face, the statute addresses the individual before whom an acknowledgement can be made, e.g., a notary public—it does *not* speak to who may make the acknowledgement on behalf of a corporation or other entity.

Defendant correctly points out that the legislative history of the SMA indicates that Congress intended to make a change from the Act in the substantive law regarding acknowledgements. However, the change, which allows notarizations under state law *and* under federal law, was meant "[t]o make the execution of instruments *easier*". H.Rep. No. 100–918, *reprinted in*, 1988 U.S.Code Cong. & Admin.News, 100th Cong., 2d Sess. at pp. 6104, 6133 (emphasis added). In the Court's view, this addition was not intended to undercut the emphasis on uniformity, but instead to offer an alternative to it that would continue to encourage investment in shipping.

This legislative history, combined with the fact that the statute is silent with respect to who may make an acknowledgement on behalf of a corporation, as distinct from the person before whom the acknowledgement can be made, suggests to the Court that the SMA now provides for an acknowledgement to be made before someone authorized to do so under state law, but that state law does not limit who may make an acknowledgement on behalf of a corporation. Under this analysis, the acknowledgement at issue was proper. However, the Court need not reach this question to decide the instant motion because, as explained below, the Court finds that irrespective of the propriety of the acknowledgement, plaintiff has substantially complied with the SMA.

### IV.

In addressing the substantial compliance requirement of the Act, which the Court looks to for guidance in its analysis of the SMA's substantial compliance requirement, courts have held that mere technicalities in execution should not be overemphasized, and in fact should often be ignored. For example, in *Collier Advertising Service v. Hudson River Day Line*, 14 F.Supp. 335 (S.D.N.Y. 1936), the opposing lienors attacked the priority of the mortgage at issue on the ground that the oath of ownership required by the statute was made by the company vice president and not the president or secretary. According to the court, "it is pressing technicality too far to say that because of the trifling irregularity in the oath the vessels lost their status as vessels of the United States and the bondholders lost their priority." *Id.* at 337.

In *The Nan B*, 78 F.Supp. 748 (D.Alaska 1948), the court was faced with affidavits that were not in strict compliance with the Act, and held that in the absence of fraud, the Act should be "liberally construed to effectuate the object of the statute to make investments in shipping and ship mortgages more attractive and secure." *Id.* at 749–50. Finally, in *Prudential Ins. Co. v. S.S. American Lancer*, 870 F.2d 867 (2d Cir.1989) the Second Circuit upheld the preferential status of a mortgage which contained a $92 million clerical error because "[t]he ... case law ... requires only that the mortgagee make a good faith effort" to comply with the relevant statutes, "as long as no other party is misled to its detriment". *Id.* at 873.

There has been no argument in this case that the acknowledgement was unauthentic or not signed with authority. Thus, it is difficult for the Court to find that any alleged defect in the acknowledgement operated to defendant's detriment. Moreover, in conducting this analysis, the Court is mindful both of the need to construe the provisions of SMA liberally in order to encourage investments in shipping, as well as the traditional reluctance of courts to terminate the preferred status of a mortgage on the basis of a technicality. Thus, even assuming, *arguen-*

**4**

*do*, that New York law dictates who may make an acknowledgement, the Court finds that the mortgage at issue in this case was in substantial compliance with section 31321(b)(6) and is thus a "preferred" mortgage under the SMA. In the Court's view, to hold plaintiff to the requirements of state law in this case would be to thwart Congressional intent.

### CONCLUSION

For the foregoing reasons, the Court holds that plaintiff is entitled to the remaining proceeds of the sale of the defendant yacht, amounting to the $36,000 currently contained in the Court's registry.

SO ORDERED.