STATE BOARD OF TAX APPEALS.

1937 CASE
CITY OF NEWARK, PETITIONER, v. WEYERHAEUSER TIMBER COMPANY, RESPONDENT.

1938 CASE
CITY OF NEWARK, PETITIONER, v. WEYERHAEUSER TIMBER COMPANY, RESPONDENT.

1939 CASE
CITY OF NEWARK, PETITIONER, v. WEYERHAEUSER TIMBER COMPANY, RESPONDENT.

1939 CASE
WEYERHAEUSER TIMBER COMPANY, PETITIONER, v. CITY OF NEWARK, RESPONDENT.

Decided September 10, 1940.

For the city of Newark, *James F. X. O'Brien* (by *Vincent J. Casale*).

For Weyerhaeuser Timber Company, *McCarter & English* (by *Conover English*).

QUINN, President. These appeals were heard together and bring up the 1937, 1938 and 1939 personal property assessments levied by the city of Newark against the Weyerhaeuser Timber Company. These were fixed for each year by the assessing authorities of the taxing district at $1,000,000. Appeals to the Essex County Board of Taxation resulted in judgments for said years, respectively, of $376,772, $409,500 and $328,800. The city now appeals to restore each of the assessments to the amount originally levied, while the taxpayer seeks to reduce the county board judgment for the year 1939 by an additional $44,389.96, representing the value of certain machinery and equipment, claimed by the company to constitute fixtures annexed to realty, and therefore not to be taxable as personalty, and an automobile, exempt from taxation under *R. S.* 54:4-3.21.

The bulk of the difference between the original assessments and the amounts of the county board judgments represents the inventory of merchandise, or average of stock in trade on hand, held by the company in the taxing district for each of the tax years in question. The company claims exemption for such inventory as having been stored in a public warehouse under *R. S.* 54:4-3.20. Whether or not it was so stored is the first question requiring disposition herein. The inventory figures are agreed by the parties to be $621,545.72, $590,516.46 and $773,557.32.

The second substantial issue raised in each of the cases is as to the taxability of the machinery and equipment referred to hereinabove, as personalty.

The third question presented is as to the deductibility of debts owing to New Jersey creditors upon the assessing dates for each of these years. We will consider these questions in order. An understanding of the first two, however, will be promoted by a brief resume of the background of the company's occupancy of the site where the taxed property has been located.

The company occupies three buildings upon a thirty-acre tract at Port Newark, which it leased from the city of Newark, owner, under indenture of lease dated January 16th, 1926, for a term of twenty years, commencing June 1st, 1926. Under the terms of the lease, the tenant was authorized to, and did build the buildings in question, for the storage, finishing, and merchandising of forest products, the lease providing that improvements thus constructed should become the property of the city at the conclusion of the term. It was further specifically provided, however, that the tenant should have the right to remove all machinery, fixtures and equipment. This reference is applicable to a large crane, movable on tracks installed in the storage shed, planing machines and saws in the planing mill, and miscellaneous other equipment in the saw mill. From 1926 until September 26th, 1934, the company carried on at the demised premises (using the buildings and equipment referred to) its business of receiving lumber shipped to Port Newark, and merchandising it from that point. On the date last mentioned, however, the com-

pany caused to be organized a subsidiary New Jersey corporation, wholly owned by it, named Atlantic Terminals, Inc., to which it proceeded to sublease the storage and mill buildings and the equipment therein contained. The new corporation promptly proceeded to engage in the business of conducting a public warehouse for hire, storing all of the merchandise received at Port Newark by petitioner, which it treated as an ordinary patron, and in addition receiving for storage general public merchandise to the extent that its books showed 322 accounts as of September 30th, 1936, 333 as of September 30th, 1937, and 328 as of September 30th, 1938.

The city of Newark contends that Atlantic Terminals, Inc., is a mere fiction, designed to enable the Weyerhaeuser Timber Company to escape taxation on its merchandise on hand, as purportedly, but not actually stored in a warehouse for hire. The facts established at the hearing, however, lead to the inevitable conclusion that Atlantic Terminals, Inc., is in every respect a going, operating and substantial warehousing enterprise. If it is, the motivation for its organization is of no consequence. It was testified on behalf of the Weyerhaeuser Company that organization of the warehouse corporation was made necessary for competitive reasons, but, however that may be, this board can have no proper concern with tax avoidance objectives, so long as their effectuation is within the letter of the applicable statutes. See *Hoboken* v. *State Board of Taxes and Assessment (Supreme Court,* 1930), 107 *N. J. L.* 35; *affirmed (Court of Errors and Appeals,* 1931), 108 *N. J. L.* 195; *Hoboken* v. *The Hoboken Dock Co. (State Board)*, filed September 12th, 1939; *City of Newark* v. *New Jersey Investment Co. (State Board,* 1940), 18 *N. J. Mis. R.* 182; 11 *Atl. Rep. (2d)* 730; *City of Newark* v. *Universal Insurance Co. (State Board)*, 18 *N. J. Mis. R.* 507; 14 *Atl. Rep. (2d)* 549.

The Atlantic Terminals, Inc., was incorporated for the express purpose, *inter alia,* of carrying on the business of a warehouseman under the statute governing the conduct of that business. *R. S.* 57:1-1, *et seq.* The extent of the custom which it has developed in the course of its business has been noted above. It handles, in precisely the same manner

as does any other regularly established warehousing business, goods of every character, including lumber. Ten per cent. of the general cargo is outbound. The servicing of lumber by the company in such manner as is required by its customers, including the Weyerhaeuser Company, does not derogate from its essential character as a public warehouse. Under the circumstances outlined, we are bound to hold the inventory of Weyerhaeuser Timber Company at all times situate in a public warehouse, and therefore exempt from taxation, within the controlling precedent of *Halligan & McLellan* v. *State Board of Tax Appeals* (*Supreme Court, 1939*), 122 *N. J. L.* 551; 6 *Atl. Rep.* (*2d*) 668, a closely comparable fact situation. In accord: *Blanchard Lumber Co.* v. *City of Newark* (*State Board*), filed December 19th, 1939. If the city regards the exemption statute as having been subject to abuse in this or other situations, its proper recourse is to the legislature, not to *quasi*-judicial tribunals bound to apply the statute as construed by the courts. The question as to the constitutionality of the act was expressly left open by the court in the *Halligan & McLellan* case, and of course will not be passed upon by this board in advance of a determination thereof by the courts.

We proceed to a consideration of the contention urged by the timber company that the machinery and equipment hereinabove described constitutes part of the freehold, under the law of fixtures, and is therefore not subject to assessment for taxation by the city as personal property. The identical question was raised by the company in the appeal of the 1935 tax assessment before this board. In an opinion by the late president of the board, Commissioner Weaver, it was held that the property was not fixtures, for the reason that it did not appear that the equipment had been installed with the intention that it should be permanently affixed to the buildings to which it had been attached. *City of Newark* v. *Weyerhaeuser Timber Co.*, filed March 9th, 1937. This conclusion is seen to be thoroughly justified by a consideration of the lease between the city as landlord and the timber company as tenant, wherein, after providing that all improvements erected upon the premises should become the property of the

city at the end of the term, it was specifically further agreed: "that the tenant shall have the right to remove therefrom all machinery, belting, cranes, trade fixtures and equipment."

The significance of this proviso is that the machinery and equipment in question was *not installed* in the buildings with the "intention of making a permanent accession to the freehold." And under the cases, such an intention is an indispensable prerequisite, along with the requirements of physical annexation and application to use with the realty, to a finding that the machinery has become a part of the freehold. *Chancellor* v. *Cruse (Court of Chancery,* 1914), 83 *N. J. Eq.* 232; 90 *Atl. Rep.* 673; *Bank of America, &c.,* v. *LaReine Hotel (Court of Chancery,* 1931), 108 *N. J. Eq.* 567; *Knickerbocker Trust Co.* v. *Penn Cordage Co. (Court of Errors and Appeals,* 1904), 66 *N. J. Eq.* 305; 58 *Atl. Rep.* 409.

The taxpayer has sought to escape the consequences of the proviso referred to by passing a corporate resolution waiving its right to remove the machinery and equipment at the end of the term and by communicating that fact to the city. This act can have no effect upon the issue before us, however, for either of two independently sufficient reasons. The company's *present* intention to abandon the equipment cannot alter the operative fact that *at the time of installation,* it was *not* intended that it should remain permanently annexed to the buildings. And that is the determinative criterion. See the cases cited, *supra.* Secondly, the company cannot effectuate a unilateral modification of what is seen to be a provision of the lease involving important benefits to the city, without the acceptance of or concurrence in such modification by the city. The machinery and equipment is personal property, taxable to the taxpayer for each of the tax years under appeal.

We have finally to consider claims for deductions for debts made by the company for each of these tax years. The taxpayer is a foreign corporation, and it will therefore suffice to say that we have recently held, in *City of Newark* v. *Household Finance Corp. (State Board,* 1940), 18 *N. J. Mis. R.* 295; 12 *Atl. Rep. (2d)* 899, that foreign corporations have no right of deduction for debts. The claims will therefore be disallowed.

Exempting inventory, but taxing machinery and equipment, for each of the tax years, results in taxable balances, based upon valuations agreed upon by the parties, as follows:

| | |
|---|---|
| 1937 | $391,401.34 |
| 1938 | 394,622.23 |
| 1939 | 332,880.06 |

The judgments of the county board for the years 1937 and 1939 will be modified by increasing the assessments to the amounts set forth. There having been no appeal by the taxpayer from the county board judgment of $409,500 for the year 1938, that judgment will be affirmed for said year.