# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

NOVEMBER TERM, 1903.

---

KNICKERBOCKER TRUST COMPANY, appellant,

*v.*

PENN CORDAGE COMPANY et al., respondents.

[Argued November 19th, 1903. Decided June 20th, 1904.]

1. Whenever chattels have been placed in and annexed to a building by their owner, as a part of the means by which to carry out the purposes for which the building was erected, or to which it has been adapted, and with the intention of permanently increasing its value for the use to which it is devoted, they become fixtures, as between the owner and his mortgagee.

2. Mortgages which cover both real and personal property (except those made by railroad companies upon their property and franchises)

must, in order to make them valid liens upon both classes of property as against creditors, be recorded, not only among the records of real estate mortgages, but also in one of the books provided for the recording of chattel mortgages.

3. Actual transcription of a chattel mortgage in the records is necessary in order to make it valid as against creditors.

4. By force of section 7 of the Chattel Mortgage act (*Gen. Stat. p. 2113*), the deposit of a chattel mortgage in the clerk's office for record creates a presumption of its immediate transcription in the records; and that presumption continues so long as the instrument remains in the office, and until it is actually transcribed, and when that is done the presumption becomes conclusive. When, however, the mortgage is taken away from the clerk's office without having been recorded, the presumption raised by the statute, being contrary to the fact, ceases to exist, and the mortgage stands in the same condition, so far as creditors are concerned, as if it had never been lodged for record.

On appeal from a decree advised by Vice-Chancellor Grey, whose opinion is reported in *20 Dick. Ch. Rep. 181.*

*Mr. John B. Humphreys* and *Messrs. Davies, Stone & Auerbach* (of the New York bar), for the appellant.

*Mr. James E. Howell, Mr. Joseph H. Gaskill* and *Mr. Charles V. D. Joline,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed to foreclose a mortgage executed by the Penn Cordage Company to the appellant, the Knickerbocker Trust Company, on the 1st day of February, 1896, to secure the payment of an issue of bonds aggregating $100,000. This mortgage covered certain lands and premises belonging to the cordage company, situate in Burlington county, with the improvements thereon, the franchises of the company, and all the goods and chattels belonging to it and being in use about the said lands and premises. At the time of its execution a prior mortgage, covering the same property, held by one Adolph Segal, and which had been recorded in the clerk's office of Burlington county, both as a real estate mortgage and as a chattel mortgage,

Knickerbocker Trust Co. v. Penn Cordage Co.

was paid off. On the 20th of February, 1896, the appellant mailed to the clerk of Burlington county both its own mortgage and also a discharge of the Segal mortgage, with a letter of instructions directing him to satisfy the latter mortgage of record and to "simultaneously record in your office the enclosed mortgage covering the same property." Upon the receipt of this letter, with its enclosures, the clerk canceled the Segal mortgage in both the real estate mortgage book and the chattel mortgage book. At the same time he recorded the appellant's mortgage in the book kept for the recording of real estate mortgages, but not in that kept for recording chattel mortgages, and, after so recording it, he returned it to the appellant.

The Penn Cordage Company became insolvent in 1897, and a receiver was appointed on December 6th of that year. The bill of complaint was filed in February, 1900.

The property embraced in the appellant's mortgage is the cordage works of the Penn Cordage Company, comprising numerous buildings, including a rope walk, together with the machinery, tools and appliances used therein. The contest is between the appellant, as mortgagee, and the receiver of the cordage company, representing judgment and other creditors. Two questions are presented—*first,* whether certain of the machinery and appliances contained in the company's buildings and used in the manufacture of its product are fixtures, and, consequently, a part of the realty; and, if they are not fixtures, then, *second,* whether the appellant's mortgage became recorded as a chattel mortgage, within the meaning of the Chattel Mortgage act, by being lodged with the county clerk for that purpose, although it was subsequently returned to the mortgagee without being in fact so recorded.

The learned vice-chancellor before whom the case was tried held that the machinery and appliances which are the subject-matter of this controversy were not fixtures. He further held that the mortgage had not been recorded as a chattel mortgage, and was therefore void as against creditors, so far as the chattels covered by it were concerned. The soundness of each of these conclusions is challenged by the appellant.

As has already been stated, the machinery and appliances which are the subject of this litigation were contained in the buildings of the Penn Cordage Company, and were used in the manufacture of its product. They consisted of a scutcher, a lapper, two breakers, three coarse spreaders, four fine spreaders, two drawing frames, eight finishers, a large number of double jennys, nine single and double twisters, two marline machines, three house-line machines, ten double-ballers, a number of strapping reel bars, several rope machines, one double and one single Boone layer, one cone former, two lathes, two drills, one shaper, one oil pump, one grindstone, one emery grinder, one picker, one porgy spinner, eight forming and laying jacks, four reeling machines, one strapping reel stand, one yarn testing reel, one belt driver, one reverse reel, one porgy jenny, one bobbin reel, one platform scale on wheels, a number of windlasses, several reel flyers and all the belting used in the various buildings which was less than six inches in width. All of these machines, with the exception of the porgy jenny, the platform scale, the windlasses and the reel flyers, were a necessary part of the company's plant. Most of them were fastened to the floors of the various buildings in which they were located by lag screws. Those which were not so fastened were attached to the buildings by some other method. The belting ran from the various machines to the shafting, supplying them with power. Two of the requisites necessary to constitute these machines and appliances fixtures, therefore, existed, viz., their actual annexation to the freehold and their application to the use or purpose to which that part of the realty with which they were connected was appropriated. The question remains whether they were annexed with the intention of making a permanent accession to the freehold.

In the earlier cases, decided not only in the supreme court and the court of chancery, but also in this court, in determining whether such intention existed with respect to a given machine, the conclusion seems to have been rested very largely upon the method adopted in making the annexation, and but little consideration given to the relation which the machine bore to the

building in which it was located, or to the other machinery in conjunction with which it was used. In *Feder* v. *Van Winkle, 8 Dick. Ch. Rep. 370,* this court took a more comprehensive view of the subject than had been done in the earlier cases, and gave controlling weight to the object for which, rather than to the method by which, the annexation was made, and declared that the physical annexation to the freehold of machinery that was so fitted for and applied to the use to which the realty was appropriated; that the machinery and buildings became unified and incorporated together, as a whole, for the prosecution of a common purpose for an indefinite period (*i. e.,* so long as the business engaged in should be carried on successfully), indicated that such machinery was designed to be, not a temporary, but a permanent, accession to the freehold. In the later case of *Temple Company* v. *Penn Mutual Life Insurance Co., 40 Vr. 36,* decided by the supreme court at the February Term, 1903, the same learned jurist who wrote the opinion in *Feder* v. *Van Winkle,* in discussing the question whether certain chattels which had been placed in a building designed for and used as a theatre (and, of course, annexed thereto) were fixtures, declared that "whatever was incorporated with the building to fit it for use as a theatre became part of the realty."

The rule laid down in *Feder* v. *Van Winkle,* and followed in *Temple Company* v. *Penn Mutual Life Insurance Co.,* states the true principle to be applied in the determination of the question when it is presented. Whenever chattels have been placed in, and annexed to, a building by their owner as a part of the means by which to carry out the purposes for which the building was erected, or to which it has been adapted, and with the intention of permanently increasing its value for the use to which it is devoted, they become, as between the owner and his mortgagee, fixtures and as much a part of the realty as the building itself. And this is true notwithstanding that such chattels may be severed from, and taken out of, the building in which they are located without doing any injury either to them or to it and advantageously used elsewhere, and notwithstanding that the building itself may thereafter readily be devoted to

a use entirely different from that which was contemplated when the annexation was made.

Tested by this principle, the machinery and appliances which are the subject-matter of this controversy, with the exception of the porgy jenny, the platform scale, the windlasses and the reel flyers (which are none of them annexed to the buildings in which they are located), are fixtures and subject to the lien of the appellant's mortgage as part of the real estate embraced therein.

As the excepted articles are not a part of the realty, it is necessary to consider and determine the second question decided by the vice-chancellor, namely, whether the appellant's mortgage is valid as a chattel mortgage against the creditors of the mortgagor, notwithstanding the fact that it was recorded only among the records of real estate mortgages and not in the book provided for the recording of chattel mortgages.

The provisions of our Chattel Mortgage act bearing upon this question are contained in sections 4, 5, 7 and 9. *Gen. Stat. p. 2113.* Section 4 provides as follows:

"That every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against the subsequent purchasers and mortgagees in good faith, unless the mortgage * * * be recorded as directed in the succeeding section of this act; *provided*, that nothing contained in this act shall be taken, construed or held to apply to any mortgage of personal property included in a mortgage of franchises and real estate heretofore or hereafter made by any railroad company, and which hath been or shall be recorded or registered as a mortgage of real estate in every county in which such railroad, or any part of it, is or shall be located, and it shall not be necessary to record as a chattel mortgage any such mortgage as is in this proviso described."

Section 5 requires the instruments mentioned in the preceding section to be recorded in the office of the register (or in the office of the clerk where there is no register) of the county where the mortgagor resides, if he is a resident of the state at the time of its execution; and if not, then in the office of the register (or clerk) of the county in which the mortgaged

property shall be at the time of the execution of the instrument. Section 7 provides as follows:

"That the clerks and registers of the several counties of this state are hereby authorized to provide suitable books, at the expense of their respective counties, in which to record the instruments by this act directed to be recorded; and it shall be the duty of the said clerks and registers to record such instruments in accordance with the provisions of this act; and the said clerks and registers shall respectively enter, at the foot of the record of each mortgage and instrument so recorded, the time when such mortgage or instrument was received by him in his office to be recorded, and shall endorse on each mortgage and instrument, when recorded as aforesaid, the time when the same was delivered to him at his office to be recorded, and the book and page in which the same has been recorded."

Section 9 provides:

"that every chattel mortgage hereafter recorded pursuant to the provisions of this act shall be valid as against the creditors of the mortgagor, and against subsequent purchasers and mortgagees, from the time of the recording thereof until the same be canceled of record."

The contention first advanced on behalf of the appellant is that the recording of its mortgage among the records of real estate mortgages was a sufficient compliance with the provisions of the· Chattel Mortgage act. It is not necessary to repeat the argument made in support of this contention. It is enough to say that the proviso, contained in section 4 of the act, makes it plain that, with the exception of the class of mortgages designated therein, every mortgage which covers both real and personal property must, in order to make it a valid lien upon both classes of property as against creditors, be recorded not only among the records of real estate mortgages, but also in one of the books which the statute under consideration requires to be provided for the recording of chattel mortgages.

The solution of the question must depend upon whether the lodging of the appellant's mortgage for record as a mortgage of chattels (for this we consider to have been the effect of the letter of instructions sent by the appellant to the clerk with

its mortgage) was, within the meaning of the statute, a recording of that instrument, notwithstanding that it was never in fact transcribed in the official book provided for the purpose. It was held by the learned vice-chancellor, in the court below, that a transcription of the mortgage in the chattel mortgage book was necessary in order to make it valid as against creditors. In this view we concur. The statute, in express words, requires that there shall be an *actual* recording of these instruments *in books specially provided,* and declares that they shall be absolutely void against creditors unless so recorded. To say that a chattel mortgage, which has been left for record but which is afterward returned to the owner unrecorded in fact, has, nevertheless, been recorded in contemplation of law, is to disregard the plain meaning of the words used in the statute, and to arbitrarily construe them in such a way is to make the statute embrace a case not covered by it.

We do not, however, concur in the view, which seems to have been held by the vice-chancellor, that, by force of the provision of section 9 of the act, a chattel mortgage is void as against creditors until it is actually transcribed in the records. The seventh section of the act requires the clerk to enter, at the foot of the record, the time when the mortgage was received by him for record, and also to endorse that time on the instrument itself. Manifestly the purpose of this requirement was to advise persons who should inspect either the record or the mortgage itself of the time when the instrument was lodged for record, and no reason can be perceived for affording this information, unless it was intended that the record, when made, should relate back to that time; in other words, that the deposit of the instrument for record, and its transcription in the record, should be presumed to have occurred at one and the same time. It follows, therefore, that, as soon as a chattel mortgage is deposited for record in the clerk's office, it must be presumed to have been forthwith transcribed in the records; and that presumption continues so long as it remains in the office and until it is actually transcribed; and when that is done the presumption becomes conclusive. When, however, the mort-

Currie *v.* N. Y. Transit Co. and National Docks Ry. Co.

gage is taken away from the clerk's office without having been recorded, the presumption raised by the statute, being contrary to the fact, ceases to exist and the mortgage stands in the same condition, so far as creditors are concerned, as if it had never been lodged for record.

The decree appealed from should be reversed, except so far as it adjudges that the porgy jenny, the platform scale, the windlasses and the reel flyers are chattels and therefore free from lien of the appellant's mortgage.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—12.

*For affirmance*—None.