# FIRST NATIONAL BANK OF CLAREMORE *v.* KEYS.

## FIRST NATIONAL BANK OF VINITA *v.* SAME.

## CITIZENS' BANK OF PRYOR CREEK *v.* SAME.

## HOGAN *v.* SAME.

### ERROR TO THE SUPREME COURT OF OKLAHOMA.

Nos. 263, 264, 302, 303. Argued April 25, 28, 1913.—Decided May 26, 1913.

Registration laws are of statutory origin, and, in each case, the applicable statute determines what instruments are to be recorded and where and what the effect is of failure to record.

An act of Congress creating a new district in the Indian Territory and establishing a clerk's office therein, and which does not expressly so provide, does not require a chattel mortgagee to re-record his instrument in the new clerk's office.

Where the duty of transferring records of instruments from one clerk's office to another newly established is placed upon the clerk, rights of persons under such instruments are not lost on account of the failure of the clerk to comply with the statute.

Even if the decision of a state court having jurisdiction of a case transferred from a Federal court were subject to review here on a non-Federal question, this court would not, in the absence of manifest error, interfere with the discretion of the trial judge in permitting or refusing an amendment.

27 Oklahoma, 704, affirmed.

On July 20, 1906, the First National Bank of Claremore brought suit against Wat Mayes in the United States District Court in the Indian Territory, Northern District, sitting at Vinita. An attachment issued and was levied on cattle belonging to Mayes and located on his ranch near Pryor Creek. It appeared that he had given mortgages

on the herd to Vinita National Bank (1899), C. M. Keys
& Co. (1901), First National Bank of Vinita (1903),
Citizens' Bank (July 24, 1905), J. C. Hogan (July 27,
1905), Mary D. Mayes (Aug. 2, 1905).

These mortgagees intervened in the attachment suit and
asked that the case be transferred to the Equity Docket
and that the cattle be sold and the proceeds applied to the
payment of their debts.

It appeared that the Bank of Claremore and the First
National Bank of Vinita also had mortgages on real estate,
and it was contended that having a lien on two funds they
should be required to seek payment out of this land before
receiving anything under their mortgages against the
cattle.   A receiver was appointed, who took charge
of the property, real and personal. He sold the herd for
$11,234.47.   The case was then referred to a master,
where all the mortgages were proved, although an attack
was made on that given by Mayes to Keyes & Co.   It
appeared that being indebted to that firm $34,800.04, he,
on October 28, 1901, gave them a note therefor due one
month after date.   To secure that note and any renewals
thereof he, on October 29, 1901, executed a mortgage on
2,835 head of mixed cattle and their increase.   The cattle
were described as being located on the "mortgagor's
range, 3 miles south of Pryor Creek, I. T.," then in the
Northern Judicial District of the Indian Territory.   The
acknowledgment recited that "Mayes executed the same
for the purposes and consideration therein named,"
omitting "and set forth" which it was claimed was re-
quired by the provisions of § 656, Mansfield's Digest of
force in the Indian Territory.   This mortgage, thus
acknowledged, was filed for record Oct. 31, 1901, with
the Clerk of the United States court, *ex officio* recorder
for the Northern District of Indian Territory, at Mus-
kogee, and was recorded Nov. 22, 1901.

At the hearing Mayes contended that he had shipped

enough cattle to pay off the mortgage debt. It appeared, however, that in January and March, 1905, he gave two notes aggregating $15,288.69. The master found that they were renewal notes representing the balance due on the original debt of $34,800.04, and were secured by the mortgage of Oct. 29, 1901. He held, however, that this mortgage, while oldest in date and while good against Mayes, was inferior to the attachment and the other mortgages because of the failure of Keys and Co. to re-record it at Vinita and transfer it to the index at Pryor Creek in pursuance of acts of May 27, 1902, 32 Stat. 276, c. 888, and February 19, 1903, 32 Stat. 842, c. 707, successively creating recording offices at those two places. He, therefore, recommended that the money should be paid in the following order: First National Bank of Vinita, $3,778.19 (mortgage of Jan. 16, 1903); First National Bank of Claremore, $4,869.10 (attachment issued July 20, 1905); Citizens' Bank of Pryor Creek, $1,824.68 (mortgage of July 24, 1905); J. C. Hogan, $6,187.00 (mortgage of July 27, 1905); Mary D. Mayes, $1,440 (mortgage of Aug. 2, 1905); Vinita National Bank (one of the cases by subsequent stipulation); Keys & Co., $15,808.69 (mortgage of Oct. 28, 1901).

Under this ruling nothing would have been paid on the mortgage to Keys & Co., which had been transferred to the Stock Yards Bank. They, therefore, filed exceptions, which were overruled. The court, however, confirmed the report and made the additional finding that "the mortgage of C. M. Keys & Co. is an absolute fraud by reason of their failure to renew or to advise people in any way, shape or form of the various payments that had been made and the transfers that had been made." The court directed that the real estate should be sold and the proceeds applied in the order of priority heretofore set out. Before this was done, Keys & Co. took the case to the United States Court of Appeals in the Indian Territory,

and while the cause was there pending, Oklahoma was made a State, and, under the Enabling Act (June 16, 1906, 34 Stat. 267, c. 3335; 34 Stat. 1286, c. 2911), the cause was transferred to the Supreme Court of Oklahoma, which (22 Oklahoma, 174), held that the acts of Congress did not require mortgages recorded at Muskogee to be re-recorded at Vinita, nor was the holder required to have them transferred to the index at Pryor Creek. It thereupon directed that the money should be paid to (1) the Vinita National Bank; (2) to Keys & Co., "the other creditors taking their places after them in the order decreed by the court below. Let the judgment of the court below be modified to conform to this opinion."

A motion for a rehearing was granted, and the then defendants in error urged many grounds why the judgment should be affirmed. The court rendered an elaborate supplemental opinion in which it held that the Keys mortgage was properly acknowledged; that it had not been rendered void by failure to take possession of the cattle; that there was no exception to the finding by the master, that the debt of $15,808.69 was due and secured by the mortgage; that no issue of fraud had been raised by the pleadings, "and the charge of fraud upon the merits seems to be without foundation." The court refused to make a final order of distribution, but adhered to the judgment of reversal previously made. The mandate was returned to the District Court of Craig County, Oklahoma.

Thereupon the Bank of Claremore, Citizens' Bank, First National Bank of Vinita, J. C. Hogan, and Mrs. Mayes called the court's attention to the fact that the Supreme Court had held that the issue of fraud had not been presented by the pleadings, and they asked leave to file amended answers to the intervention of Keys & Co., in which they denied the existence of any debt from Mayes to Keys & Co., averring that the mortgage was defectively

acknowledged, was fraudulent in law and in fact, or if originally good had lost its validity against creditors of Mayes because he had been permitted to retain possession of the herd.

The motions to amend were disallowed and (the Vinita National Bank, by consent, having been paid) the court entered a decree in conformity with the opinion of the Supreme Court, under which the proceeds of the cattle were to be applied to the payment of the mortgage of Keys & Co., transferred to the Stock Yards Bank. No distribution was made of the proceeds of the real estate. The Claremore Bank and the other plaintiffs in error again took the case to the Supreme Court of Oklahoma, which held that the District Court had merely followed its ruling and dismissed the writ of error. The case was then brought here on the ground that the construction of Federal statutes and the validity of a Federal judgment were involved.

*Mr. W. H. Kornegay,* with whom *Mr. J. Howard Langley* was on the brief, for plaintiffs in error.

*Mr. Robert F. Blair* for defendants in error.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The Bank of Claremore levied an attachment upon cattle of Mayes, who had given several mortgages on the herd. The property did not sell for enough to pay all of the liens, and the various creditors united in an attack on the mortgage to Keys & Co., which, being the oldest in date would, unless defeated take all of the fund. This mortgage, however, was sustained by the Supreme Court of Oklahoma, and three of the contesting creditors brought their cases here. They were all argued together and were

submitted on the briefs and record in No. 263, in which
there are 44 assignments of error. They need not, how-
ever, be separately considered, since the controlling
question is whether the mortgage from Mayes to Keys &
Co., duly recorded at Muskogee, on Oct. 31, 1901, lost its
lien because it was not re-recorded in 1902 at Vinita, and
was not transferred in 1903 to the indexes at Pryor Creek,
under the acts of 1902 (32 Stat. 276) and 1903 (32 Stat.
843), successively creating new districts with recording
offices at those two places.

Registration laws are of statutory origin, and the
statute must in each case be examined to determine what
instruments are to be recorded, where they are to be
recorded, and the effect of a failure to record. Provision
as to these matters was made by Congress when it de-
clared that the registration laws of Arkansas should be of
force in the Indian Territory, and that the clerk of the
court should be *ex officio* recorder, with his office at Musko-
gee. In compliance with that law the mortgage from
Mayes to Keys was duly recorded at Muskogee. Some
months later Congress passed the act of May 27, 1902,
32 Stat. 276, c. 888, dividing the District, providing that
the "clerk's office at Vinita shall be the Recorder's Office
for the Northern District," in which Mayes' ranch was
left. But as that statute did not require that recorded
instruments should be re-recorded at Vinita, Keys & Co.
were under no obligation to do what the law did not
demand, but could rely on the fact that their mortgage
had been duly registered at Muskogee in accordance with
the law of force when it was given and when the cattle
were in that district.

Nor is the case different under the act of February 19,
1903, 32 Stat. 842, c. 707. It created 25 recording offices,
named Pryor Creek as the place for the office in the Fifth
District, in which Mayes' ranch was located, made the
clerk *ex officio* recorder, provided that he should receive

the usual fees for registering deeds and mortgages, but that all sums collected in excess of $1,800 should be paid over to a school fund. It then declared that "such instruments heretofore recorded with the clerk of any United States Court in Indian Territory shall not be required to be again recorded under this provision, but shall be transferred to the indexes without further cost, and such records heretofore made shall be of full force and effect, the same as if made under this statute."

This provision of the act, following as it does the clause on the subject of fees, was evidently addressed to the clerk, who was thereby required, without cost, to transfer to the indexes in his office all papers previously recorded at Muskogee or Vinita relating to property in his district. There was no provision in the statute that the lien of a duly recorded mortgage should be lost against subsequent purchasers if not transferred to the index, and that silence cannot be construed into an affirmative declaration that such penalty should follow non-action by the mortgagee. Congress could have made it the duty of grantees to have their recorded documents again registered in the new district on pain of holding their rights subject to those which might be acquired by *bona fide* purchasers. But it made no such provision and we need not, therefore, inquire as to whether, had it done so, it would not have been necessary to give a reasonable time in which to have deeds and mortgages reindexed. The duty to transfer to the index was imposed on the clerk. No time was fixed within which it should be done. No penalty for its non-performance was imposed on the holder of any instrument previously and duly recorded. Purchasers were charged with notice of territorial limits and that Mayes' ranch had been in the old Northern District at a time the registration office was located at Muskogee, and that there they must look to see whether during that period sales had been made or mortgages given on property then

located within the District.  This is in accord with the practice in the many instances in which counties have been subdivided.  In none of which do we find that holders of mortgages on property falling in the new county lost their rights because of a failure to have them refiled, reindexed, or re-recorded at the new county seat.

This conclusion disposes of the case, because the other assignments of error relate to findings by the master to which the plaintiffs in error took no exception, but on which they were heard in the Supreme Court of Oklahoma, upon their application for a rehearing.  In the rulings of that court, so far as they are subject to review on this writ, we find no error.  As to those made when the mandate was returned to the District Court, it is sufficient to say that they are all foreclosed by the refusal to permit plaintiffs in error to amend.  For even if the decision of a state court having jurisdiction of a case transferred from a Federal court were subject to review here on a non-Federal question, we would not interfere with the discretion of the trial judge in permitting or refusing an amendment except in case of manifest error.  Cf. *Spencer* v. *Lapsley*, 20 How. 264.  The judgment of the Supreme Court of Oklahoma is

*Affirmed.*