OPINION OF THE COURT
 

 STAPLETON, Circuit Judge.
 

 In this case, we must decide whether the lien of a ship mortgage properly filed with the United States Coast Guard more than 90 days before the ship mortgagor filed a bankruptcy petition may be defeated by the bankruptcy trustee because the Coast Guard did not record the ship mortgage until after the bankruptcy petition was filed. We conclude that, under the Ship Mortgage Act of 1920 (“SMA”),
 
 [1]
 
 a ship mortage is valid against third parties when it has been properly filed for recordation with the Coast Guard and retained by the Coast Guard in a manner that permits prospective creditors to learn of pre-existing liens with reasonable effort.
 

 I.
 

 Pasquale Alberto (“Debtor”) purchased a motor yacht (“the vessel”) from Jackson Marine Sales pursuant to an Installment Sale Agreement-Security Agreement, which the seller assigned to Maryland National Bank (“Bank”). The Security Agreement required the Debtor to “complete and execute any documents deemed necessary by [the Bank] to enroll the vessel as a vessel of the United States and to place the [Bank] in the position of a preferred ship’s mortgagee.” App. at 258.
 

 On August 12, 1983, the Bank, through an agent, applied for federal documentation of the vessel at the United States Coast Guard Office of Vessel Documentation in Philadelphia and the Coast Guard thereafter issued notice of an award of an offi
 
 *715
 
 cial number to the vessel 1984, the Debtor executed a “First Preferred Mortgage of Vessel” in favor of the Bank and the Bank later filed a financing statement covering the vessel with the New Jersey Secretary of State. On April 5, 1984, the Coast Guard issued a Certificate of Documentation for the vessel. On January 6,
 

 On April 9, 1984, the Bank’s agent sent the mortgage and appropriate accompanying documents to the Coast Guard for rec-ordation. The Coast Guard marked these documents as received on April 13, 1984. It was not until October 30, 1984, six and a half months later, however, that the Coast Guard recorded and indexed the Bank’s mortgage and endorsed it upon the vessel’s abstract of title.
 
 [2]
 
 In the interim, on August 28, 1984, the Debtor filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code.
 
 [3]
 

 On May 23, 1985, the Bank moved the bankruptcy court to lift the automatic stay imposed by 11 U.S.C. § 362 and to permit the Bank to reclaim the vessel. The bankruptcy court denied the Bank’s motion, 66 B.R. 132, holding instead that the bankruptcy trustee could avoid the Bank’s interest in the vessel pursuant to his powers under 11 U.S.C. § 544. The bankruptcy court found: that the validity of a mortgage on a federally documented vessel is determined exclusively by federal law; that the Bank’s mortgage was not valid under the SMA until recorded by the Coast Guard on October 30, 1984; that the automatic stay barred recordation of the Bank’s mortgage after the filing of the petition; and that subsequent recordation was not permitted pursuant to 11 U.S.C. §§ 362(b)(3) and 546(b) because the SMA did not provide that recordation would “relate back” to a time before the bankruptcy petition. The district court affirmed the decision of the bankruptcy court, adding that, even if subsequent recordation were permissible under the automatic stay, the Bank’s preferred ship mortgage would not prevail over previously perfected non-maritime liens.
 

 The Bank makes three arguments supporting the validity of its security interest in the vessel. First, the Bank argues that state law governs a security interest in a federally documented vessel until a mortgage on such vessel is recorded by the Coast Guard. Second, the Bank insists that a mortgage on a federally documented vessel is valid under the SMA when received by the Coast Guard. Third, the Bank asserts that a mortgage on a federally documented vessel may be recorded after a filing for bankruptcy pursuant to 11 U.S.C. §§ 362(b)(3) and 546(b), and that a preferred ship mortgage prevails over previously perfected non-maritime liens.
 

 II.
 

 Upon the issuance of a Certificate of Documentation for the vessel at issue on April 5, 1984, the vessel was a “vessel of the United States.”
 
 [4]
 
 Section 1012 of Title 46, U.S.C., provides that:
 

 No bill of sale, conveyance, mortgage, assignment of mortgage, or hypoth-ecation (except bottomry), which includes a vessel of the United States or any portion thereof shall be valid in respect to such vessel against any person other than the grantor or mortgagor, his heirs or devisees, and any person having actu
 
 *716
 
 al notice thereof, until such bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation is recorded in the office of the collector of customs at the home port of such vessel.
 

 To permit state law to govern security interests in federally documented vessels would undermine the congressional intent reflected in § 1012 that a federal registry be established to which a diligent prospective creditor may resort to determine the status of a vessel’s title.
 
 See White’s Bank v. Smith,
 
 74 U.S. (7 Wall.) 646, 19 L.Ed. 211 (1868). Accordingly, we conclude that § 1012 “has usurped the entire field and leaves no room for interference by state statutes.”
 
 Velikopoljski v. Florida National Bank (In re Velikopoljski),
 
 54 B.R. 534, 537 (S.D.Fla.1985);
 
 accord McCorkle v. First Pennsylvania Banking & Trust Co.,
 
 459 F.2d 243, 246 n. 2 (4th Cir.1972). Upon the vessel’s documentation as a vessel of the United States, the validity of the Bank’s security interest was determined exclusively by federal law.
 
 [5]
 

 III.
 

 Congress first established a federal recording system for mortgages on vessels of the United States by the Act of July 29, 1850, ch. 27, § 1, 9 Stat. 440.
 
 [6]
 
 As noted by the Supreme Court, “the system of recording these instruments in the collector’s office, at the home port of the vessel, furnishes a much readier opportunity to persons dealing in this species of property, to obtain a knowledge of the condition of the title, than by the former mode under the State law.”
 
 White’s Bank v. Smith,
 
 74 U.S. (7 Wall.) 646, 651, 19 L.Ed. 211 (1868). Nonetheless, because a ship mortgagee could not foreclose on a properly recorded mortgage in admiralty and the mortgage lien was held to be inferior to all maritime liens,
 
 e.g., The J.E. Rumbell,
 
 148 U.S. 1, 15-16, 13 S.Ct. 498, 501, 37 L.Ed. 345 (1893), “[mjortgage security on ships [was] practically worthless” before the enactment of the SMA. S.Rep. No. 573, 66th Cong., 2d Sess. 1, 9 (1920).
 
 See generally
 
 G. Gilmore & C. Black,
 
 The Law of Admiralty
 
 688-90 (2d ed. 1975).
 

 To encourage private American investment in United States shipping, Congress passed the Ship Mortgage Act of 1920, ch. 250, § 30, 41 Stat. 1000.
 
 See, e.g., Detroit Trust Co. v. The Thomas Barium,
 
 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176 (1934);
 
 Seattle-First National Bank v. Bluewater Partnership,
 
 772 F.2d 565, 569 (9th Cir.1985);
 
 Merchants National Bank of Mobile v. Ward Rig No. 7,
 
 634 F.2d 952, 955 (5th Cir.1981);
 
 Mastan Co. v. Steinberg,
 
 418 F.2d 177, 179 (3d Cir.1969),
 
 cert. denied,
 
 397 U.S. 1009, 90 S.Ct. 1238, 25
 
 *717
 
 L.Ed.2d 422 (1970). Legislative history indicates that Congress sought to make ship mortgage security “good except as to certain demands that should be superior to everything else, such as wages. We want our people and capital interested in shipping and shipping securities.” S.Rep. No. 573, 66th Cong., 2d Sess. 1, 9 (1920).
 

 To encourage investment in shipping, Congress, through the SMA, (1) provided for notice of pre-existing liens on vessels to prospective creditors by reenacting the recording provisions of the earlier Act,
 
 see
 
 46 U.S.C. § 921, and (2) granted ship mortgagees a lien against the mortgaged vessel superior to most other liens upon compliance with the conditions necessary to obtain a “preferred mortgage.”
 
 See id.
 
 §§ 922, 953;
 
 see. generally
 
 G. Gilmore,
 
 supra,
 
 at 688-717; Gyory,
 
 Security at Sea: A Review of the Preferred Ship Mortgage,
 
 31 Fordham L’.Rev. 231 (1962).
 

 The SMA envisions a two-step process for a ship mortgagee to perfect its security interest in a federally documented vessel. First, recordation of a ship mortgage is required for the mortgage to be valid against persons other than the mortgagor, his heirs or devisees, and persons with actual notice of the mortgage.
 
 See
 
 46 U.S.C. §§ 921, 1012. Prospective non-maritime creditors are put on notice of the mortgage by its recordation with the Coast Guard at the vessel’s home port. Upon recordation, the ship mortgage is valid and has priority over all subsequent non-maritime liens.
 
 See Morse Drydock & Repair Co. v. S.S. Northern Star,
 
 271 U.S. 552, 554, 46 S.Ct. 589, 589-90, 70 L.Ed. 1082 (1926);
 
 Jackson v. Inland Oil & Transport Co.,
 
 318 F.2d 802, 810 (5th Cir.1963).
 

 To obtain the protections of preferred mortgage status,
 
 see
 
 46 U.S.C. § 953, a mortgagee must comply with the additional conditions of 46 U.S.C. § 922. A ship mortgage does not achieve preferred mortgage status until the mortgage is both recorded and subsequently endorsed upon the vessel’s documents.
 
 Morse Drydock,
 
 271 U.S. at 555-56, 46 S.Ct. at 590. Preferred mortgage status is not achieved until endorsement of the mortgage upon the vessel’s documents because prospective maritime creditors, who generally supply goods or services necessary to keep the vessel underway, often lack convenient access to the records in the vessel’s home port.
 
 [7]
 
 Once a mortgage has achieved preferred mortgage status, it has priority over all claims against the vessel except for maritime liens arising before the recording and endorsement of the preferred mortgage,
 
 [8]
 
 certain maritime liens whenever arising, and expenses and fees allowed and costs taxed by the court. 46 U.S.C. § 953.
 

 IV.
 

 The recording provision of the SMA provides that:
 

 (a)
 
 No ... mortgage
 
 which, at the time such ... mortgage is made, includes a vessel of the United States, or any portion thereof, as the whole or any part of the property ... mortgaged
 
 shall be valid,
 
 in respect to such vessel, against any person other than the ... mortgagor, his heir or devisee, and a person having actual notice thereof,
 
 until such ... mort
 
 
 *718
 

 gage is recorded
 
 in the office of the collector of customs of the port of documentation of such vessel, as provided in subsection (b) of this section.
 

 (b) Such collector of customs shall record ... mortgages delivered to him,
 
 in the order of their reception,
 
 in books to be kept for that purpose and indexed to show—
 

 (1) The name of the vessel;
 

 (2) The names of the parties to the ... mortgage;
 

 (3) The
 
 time and date of reception
 
 of the instrument;
 

 (4) The intertest in the vessel so ... mortgaged; and
 

 (5) The amount and date of maturity of the mortgage.
 

 46 U.S.C. § 921 (emphasis added).
 
 [9]
 

 A Coast Guard documentation officer testified before the bankruptcy judge that, when a mortgage on a vessel of the United States is filed for recordation with the Coast Guard, the mortgage application is first reviewed for “basic compliance” with the applicable regulations. App. at 156. If the mortgage is “determined to be acceptable,”
 
 id.,
 
 the vessel’s file is removed from the active documents file, which is indexed alphabetically, and placed, with the mortgage documents, in the pending work drawers, which are indexed by date of receipt.
 
 [10]
 

 Id.
 
 at 155, 158.
 

 Coast Guard officers then work on the files in the pending work drawers in order of receipt. When a vessel’s file comes to the front of the drawer, an officer will “determine at that point if all the requirements [have] been met for recordability, and physically go and obtain a book and page number, designate the date and time of recordation, do the proper recordation stamping and certification, endorse the document if it is available, endorse the abstract of title, [and] return the instruments to the proper parties.” .
 
 Id.
 
 at 164. The officer’s review is again for compliance with the regulations.
 
 Id.
 
 at 171-72.
 

 The Coast Guard documentation officer also testified that, if the Coast Guard receives an inquiry regarding a vessel for which a mortgage is awaiting recordation, the Coast Guard will notify the inquirer that a mortgage is pending.
 
 Id.
 
 at 162, 183-84. In this case, for example, a party attempting to file a second mortgage on the vessel was told that a prior mortgage was pending.
 
 Id.
 
 at 271.
 

 The Bank’s mortgage, received on April 13, 1984, was determined to be acceptable and was placed in a pending work drawer.
 
 Id.
 
 at 166. The Bank’s mortgage was finally determined to be recordable and was recorded on October 30, 1984.
 
 Id.
 
 at 170-71. The documentation officer testified that the Coast Guard’s delay, first in documenting the vessel and then in recording the Bank’s mortgage, was due solely to a backlog of applications for documentation and recordation filed with the Coast Guard.
 
 Id.
 
 at 152, 170-71. The officer testified that, in April 1984, when the Bank’s mortgage application was received, 989 vessel files, of which 337 involved mortgage instruments, were awaiting action by a qualified documentation officer, and that, as of June 21, 1985, the date of her testimony, approximately 1200 files were awaiting action.
 
 Id,
 
 at 160.
 

 There is no suggestion in this case that the Bank intended to evade the SMA’s recording requirements or mislead any creditor, and there is no indication that any creditor was in fact misled. The issue is simply whether the SMA requires that a ship mortgagee be vulnerable to a bankruptcy trustee’s lien when the ship mortgagor files a petition in bankruptcy after the ship mortgagee has filed the mortgage
 
 *719
 
 with the Coast Guard but before the Coast Guard actually has recorded the mortgage.
 

 V.
 

 The bankruptcy trustee relies upon the statutory language, “[n]o ... mortgage ... shall be valid ... until such ... mortgage is recorded,” to argue that the Bank’s mortgage was not valid until October 30, 1984 when the Coast Guard inserted the Bank's mortgage in the appropriate book and indexed it. The trustee notes that Coast Guard regulations state that the “date and time of recordation of an instrument is the actual date and time at which the recording documentation officer designates the book into which the instrument will be placed.” 46 C.F.R. § 67.29-15. The Bank asserts that the mortgage was valid against third parties when filed for recordation with the Coast Guard and retained by the Coast Guard in a manner that permitted diligent prospective creditors to learn of the pre-existing lien.
 

 In interpreting a federal statute, our task is to ascertain congressional intent. “In seeking to discern Congressional intent from the legislative text, a court must be mindful of the statute’s object and policy and must read the disputed provision in the context of the entire statute and the provisions of related statutes.”
 
 N.J. Transit Policemen’s Benevolent Association Local 304 v. New Jersey Transit Corp.,
 
 806 F.2d 451, 452-53 (3d Cir.1986). Here, we must determine whether Congress intended a mortgage properly filed for recordation to be effective against third parties if prospective creditors could learn of the pre-ex-isting mortgage lien with reasonable effort.
 

 “The primary purpose of the Ship Mortgage Act is to induce private capital to invest in shipping.”
 
 Custom Fuel Services v. Lombas Industries,
 
 805 F.2d 561, 568 (5th Cir.1986);
 
 accord, e.g., Detroit Trust Co.,
 
 293 U.S. at 38-39, 55 S.Ct. at 36;
 
 Seattle-First National Bank, 112.
 
 F.2d at 569;
 
 Mastan Co. v. Steinberg,
 
 418 F.2d at 179;
 
 The Favorite,
 
 120 F.2d 899, 902 (2d Cir.1941). The SMA was designed to create “certainty in financing” vessels of the United States. H.R.Rep. No. 1116, 89th Cong., 1st Sess.,
 
 reprinted in
 
 1965 U.S. Code & Admin. News 4231, 4232.
 

 Recognizing that purpose, the Supreme Court refused to construe the SMA to require that money raised by the sale of bonds secured by a ship mortgage must be put to maritime uses for the mortgage to fall under the SMA:
 

 It is plain that the fundamental purpose to promote public confidence in such securities, and their extended use as investments, would have been frustrated if purchasers of bonds had to discover at their peril the application of the proceeds of the secured loans, or if their rights depended upon such knowledge as their trustee might have, rather than upon the satisfaction of the statutory conditions and the disclosures, as required, by in-dorsement on the vessel’s documents and recording.
 

 Detroit Trust Co. v. The Thomas Barium,
 
 293 U.S. 21, 40-41, 55 S.Ct. 31, 37, 79 L.Ed. 176 (1934). We believe that it would similarly frustrate the congressional purpose to encourage ship financing if, after a mortgagee has done everything possible to perfect its interest, its security could be impaired by the recording agency’s delay in recording a properly filed instrument.
 

 To promote the purpose of the SMA, courts have held that “[substantial compliance with the Act’s requirements is sufficient.”
 
 Seattle-First National Bank,
 
 772 F.2d at 570;
 
 accord, e.g., Merchants National Bank,
 
 634 F.2d at 956;
 
 Lake Jackson State Bank v. Oil Screw Kingfish Too,
 
 240 F.Supp. 450, 452 (S.D.Tex.1965);
 
 The Nan B,
 
 12 Alaska 6, 78 F.Supp. 748, 749-50 (1948);
 
 Collier Advertising Service v. Hudson River Day Line,
 
 14 F.Supp. 335, 338 (S.D.N.Y.1936), aff
 
 'd,
 
 93 F.2d 457 (2d Cir.1937). “[T]he statute here involved should be strictly construed so far as the protection of creditors and lienors from fraud and like acts is concerned, but liberally construed to effectuate the object of the statute to make investments in shipping and ship mortgages more attractive and secure.”
 
 The Nan B,
 
 78 F.Supp. at
 
 *720
 
 749-50;
 
 see also The Favorite,
 
 120 F.2d at 902.
 

 In
 
 The Fort Orange,
 
 5 F.Supp. 833 (S.D.N.Y.1933), for example, the ship mortgage was executed and delivered a few hours before the covered vessels were federally documented. The court refused to invalidate the preferred ship mortgage simply because “in attempting to comply with the statute, some attorney or clerk failed to file and record his documents in proper order and sequence.”
 
 Id.
 
 at 840.
 

 An invalidation of a preferred ship mortgage, otherwise sufficient, for any such reason, would contravene the avowed purpose of the Ship Mortgage Act to furnish protection to persons loaning money on the security of such mortgages.
 

 Id.
 

 In
 
 Morgan Guaranty Trust Co. v. Hellenic Lines Ltd.,
 
 621 F.Supp. 198 (S.D.N.Y.1985), the court refused to invalidate preferred ship mortgages due to informalities in their execution, noting that “courts have consistently sustained mortgage instruments upon a showing of good faith efforts to comply with the Act.”
 
 Id.
 
 at 215.
 

 While the informalities relating to the actual creation of a mortgage must be scrutinized carefully, where, as here, no third parties have been prejudiced by the informalities in the formalities, and the mortgage parties have substantially complied with the requirements of execution, holding the mortgages invalid because of these informalities would not only provide an unexpected windfall for third parties but would “defeat[ ] the obvious intentions of the parties without promoting the function of the statute involved.”
 
 Clements v. Snider,
 
 409 F.2d 549, 551 (9th Cir.1969).
 

 Id.
 
 In this case, the Bank did all that it could to comply with the statute.
 

 To hold that a ship mortgage properly filed with the Coast Guard is invalid against third parties until the Coast Guard engages in the final step of recordation would defeat the congressional goal of encouraging private American investment in shipping. By contrast, to hold that a ship mortgage is valid when properly filed for recordation and held in a manner that provides notice of the mortgage lien to any diligent prospective creditor would effectuate the purpose of the statute and not disrupt the expectations of diligent prospective creditors.
 

 We have previously recognized that notice of pre-existing liens to prospective creditors is the purpose of the SMA’s recording requirements. In
 
 Mobile Marine Sales, Ltd. v. M/V Prodromos,
 
 776 F.2d 85 (3d Cir.1985), we upheld the priority of a foreign ship mortgage under 46 U.S.C. § 951, finding it to be “duly registered” despite the absence of a required navigation number, in part because “the registration complied sufficiently with the procedural requirements to provide completely adequate notice of the mortgage on this vessel to any third party who inspected the records.”
 
 Id.
 
 at 92. Similarly, in
 
 Cunard S.S. Co. v. S.S. Cariba,
 
 1972 A.M.C. 2310 (E.D.N.Y.1972), the court upheld the validity of a foreign ship mortgage that was recorded after the ship was attached where the mortgage was filed, registered, and became available for public inspection before attachment.
 
 Id.
 
 at 2315.
 

 Where the purpose of a recording statute is met, courts have long acted to protect diligent creditors, and this rule was well known when the SMA was enacted. Authorities on recording law, in 1920 and thereafter, recognizing the notice effect of a properly filed mortgage, generally agree that “the deposit of a mortgage in the proper office to be filed or recorded is equivalent to recording it.” L. Jones, 1
 
 Law of Chattel Mortgages & Conditional Sales
 
 § 264, at 445 (6th ed. 1933);
 
 accord
 
 76 C.J.S.
 
 Records
 
 § 18, at 124 (1952); 14 C.J.S.
 
 Chattel Mortgages
 
 § 159, at 766 (1939); 66 Am.Jur.2d
 
 Records and Recording Laws
 
 § 154, at 436 (1973) (“one view”);
 
 see also
 
 59 C.J.S.
 
 Mortgages
 
 § 205, at 271 (1949) (“[generally it is held that a mortgage is to be deemed ‘recorded’ from the time it is filed for record in the proper office”); L. Jones, 1
 
 Law of Mortgages of Real Property
 
 § 622, at 875 (8th ed. 1928) (same); P. Rohan, 6A
 
 Powell on Real
 
 
 *721
 

 Property
 
 11906, at 82-35 (1986) (same); J. Grimes, 8A
 
 Thompson on Real Property
 
 § 4345, at 29-30 (1963) (same; “aside from any express statutory provision, the judicial interpretation of the effect of filing is generally the same”).
 

 Although most of the cases reflecting this rule deal with state law,
 
 [11]
 
 federal courts have recognized the general principle.
 
 E.g., Marbury v. Madison,
 
 5 U.S. (1 Cranch) 137, 159, 2 L.Ed. 60 (1803) (“When all the requisites have been performed, which authorize a recording officer to record any instrument whatever, and the order for that purpose has been given, the instrument is, in law, considered as recorded, although the manual labor of inserting it in a book kept for that purpose may not have been performed.”);
 
 Whitney v. Butler,
 
 118 U.S. 655, 661, 7 S.Ct. 61, 64, 30 L.Ed. 266 (1886) (“The general rule is, that the deed is considered as recorded from the time of such deposit.”);
 
 First National Bank of Claremore v. Keys,
 
 229 U.S. 179, 180, 184, 33 S.Ct. 642, 642-43, 644, 57 L.Ed. 1140 (1913) (Court stated that mortgage was “recorded” on the date it was “filed for record”);
 
 Merchants National Bank,
 
 634 F.2d at 956 (noting that an “instrument has extra-party legal effect as of [the] moment” it is received for recording under 46 U.S.C. § 921);
 
 The Washington,
 
 16 F.2d 206, 209 (2d Cir.1926) (“a deed tendered for record is deemed recorded the day, hour, and minute of its reception by the recording officer”).
 

 The trustee notes that the SMA provides a cause of action against the recording officer for failure “properly to perform any duty required of the collector” under the SMA, 46 U.S.C. § 941(c), and argues that the Bank’s proper remedy is to sue the Coast Guard for its delay. This section is irrelevant to the determination whether Congress intended a ship mortgage to be valid when properly filed and held so as to provide notice to prospective creditors or only when the Coast Guard has engaged in the final act of designating a book and page upon which to record the instrument. Assuming the Coast Guard has a duty to record the mortgage within a certain period of time, a party who can prove injury due to the failure to record could sue the Coast Guard whichever way we resolve that issue. We further note that forcing ship mortgagees to pursue an uncertain recovery from the Coast Guard in the event of a delay between filing and recordation would not fulfill congressional intent to encourage American investment in shipping by assuring a diligent creditor security in the vessel.
 

 Therefore, we hold that a ship mortgage is valid against third parties when properly filed for recordation with the Coast Guard and retained by it in a manner that permits diligent prospective creditors to learn of the mortgage’s pre-existing lien on the mortgaged vessel. Because the bankruptcy judge and the district judge took a different view, they had no occasion to make a factual finding as to whether the Coast Guard in this instance held the Bank’s properly filed mortgage in a manner that would have provided such notice to diligent prospective creditors. Although the record suggests to us that it did, the bankruptcy judge expressed some doubt about the matter and we conclude that the better course is to remand the case so that issue may be directly addressed.
 

 The Coast Guard documentation officer testified that, if the Coast Guard receives an inquiry regarding a federally documented vessel for which a mortgage is awaiting recordation, the Coast Guard will inform the inquirer that a mortgage is pending. App. at 162, 183-84. Further, because any diligent prospective creditor contemplating lending to the ship mortgagor with the vessel as collateral will search the records, the absence of the vessel’s file from the
 
 *722
 
 active documents file apparently will alert any such searcher to check the pending work drawers. Whether a searcher may examine such drawers or must ask the Coast Guard to examine such drawers is not clear from the present record. The important point for present purposes, however, is that the documents in the file drawers may well be available for public inspection.
 
 [12]
 

 The bankruptcy judge, however, stated that, “based upon [the documentation officer’s] testimony, it is not clear that a mortgage is available for public inspection while it is in the United States Coast Guard’s pending file. Moreover, it appears that the only information the Coast Guard may furnish at that time is that a mortgage is pending.” App. at 59. If this be the case, it may be that there was no substantial compliance with 46 U.S.C. § 921 in April 1984. For the Bank’s mortgage to have been valid when filed for recordation, a diligent prospective creditor must have been able to learn of at least the existence, duration, and extent of the Bank’s lien at that time.
 

 On remand, the court will resolve the factual issue of whether diligent prospective creditors would have received adequate notice of the Bank’s mortgage lien on the vessel before recordation of the mortgage. It may do so on the basis of the existing record or, in its discretion, reopen the record to receive additional evidence.
 

 VI.
 

 The Bank asserts that, since October 30, 1984, it has possessed a preferred ship mortgage that prevails over all non-maritime liens whenever they arose. Because the lien asserted by the trustee under 11 U.S.C. § 544 is not a maritime lien,
 
 e.g., In re H & S Transportation Co.,
 
 42 B.R. 164, 166-68 (Bankr.M.D.Tenn.1984), the Bank urges that its lien is superior to that of the trustee. Although we agree that a valid preferred ship mortgage prevails over all non-maritime liens,
 
 see
 
 46 U.S.C. § 953;
 
 supra
 
 footnote 8, we disagree with the Bank’s assertion that it held a valid preferred ship mortgage on October 30, 1984.
 

 If it is ultimately determined that there was no substantial compliance with 46 U.S.C. § 921 in April 1984 because the information held by the Coast Guard was not reasonably accessible, it will be necessary to determine whether the Coast Guard’s recording of the Bank’s ship mortgage on October 30,1984 or its subsequent endorsement of the mortgage upon the vessel’s documents violated the automatic stay provisions of 11 U.S.C. § 362(a). This will involve determinations of whether each of these acts comes within the scope of § 362(a)’s preclusion and whether either of them come within the exclusion of § 362(b).
 

 Section 362(a) provides that the filing of a bankruptcy petition “operates as a stay, applicable to all entities, of— ... (4) any act to create, perfect, or enforce any lien against property of the estate.” Section 101(14) defines “entity” to include a “governmental unit” and § 101(26) defines “governmental unit” to include a department or agency of the United States. Rec-ordation of a ship mortgage makes that mortgage valid against the subsequent non-maritime liens of third parties without actual notice of the mortgage and thus constitutes an act to perfect a “lien against property of the estate.” Similarly, endorsement of a ship mortgage upon a vessel’s documents,
 
 following
 
 recordation of the mortgage and compliance with the other conditions of 46 U.S.C. § 922, gives that mortgage priority over most subsequent maritime liens and all non-maritime liens whenever arising, and thus also constitutes an act to perfect a “lien against property of the estate.”
 

 Therefore, by its terms, the automatic stay statute barred both the Coast Guard’s
 
 *723
 
 post-petition recordation of the Bank’s mortgage and its subsequent endorsement of the mortgage upon the vessel’s documents. The Bank, however, asserts that a post-petition perfection of a preferred mortgage falls within an exception to the automatic stay. Section 362(b)(3) excepts from the automatic stay “any act to perfect an interest in property to the extent that the trustee’s rights and powers are subject to such perfection under section 546(b).” Section 546(b) states that: “The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.”
 

 In making this argument, the Bank has failed to recognize the two-step nature of the perfection process under the SMA. A ship mortgage achieves preferred status only upon compliance with all the conditions of 46 U.S.C. § 922, including both recordation of the mortgage and endorsement of it upon the vessel’s documents.
 
 Morse Drydock,
 
 271 U.S. at 555-56, 46 S.Ct. at 590; 46 U.S.C. §§ 922(a), 953(a). Because both the act of recordation and the act of endorsement thereafter come within the stay provisions of § 362(a), it is not sufficient for the Bank to show that the endorsement of the vessel’s documents following recordation of the mortgage was an act qualifying for exclusion under §§ 362(b)(3) and 546(b); it must also appear that the act of recording similarly qualified for that exclusion. The act of recording, however, does not perfect “an interest in property ... effective against an entity that acquires rights in such property
 
 before the date of such
 
 perfection.” 11 U.S.C. § 546(b) (emphasis added). Thus, the recording of the mortgage on October 30, 1984 violated § 362(a) and was ineffective. As a result, the subsequent endorsement of the mortgage upon the vessel’s documents did not create a preferred ship mortgage.
 

 It follows that the Bank’s third argument does not provide a basis for sustaining its lien that is independent of its substantial compliance argument. Thus, in sum, if the Bank proves substantial compliance, it must prevail; if it does not prove substantial compliance, it cannot prevail.
 

 VII.
 

 We will reverse the district court’s order of April 23, 1986, which affirmed the bankruptcy court’s order of September 23,1985. We also will direct that, upon remand to the district court, the district court remand to the bankruptcy court for proceedings consistent with this opinion.
 

 [1]
 

 . We will use the term "SMA" to refer to the Ship Mortgage Act of 1920, ch. 250, § 30, 41 Stat. 1000 (codified at 46 U.S.C. § 911
 
 et. seq.),
 
 as amended and supplemented by the Home Port of Vessels Act, ch. 235, 43 Stat. 948 (1925) (codified at 46 U.S.C. §§ 1011-1014).
 

 [2]
 

 . We note that the Coast Guard, on the vessel’s general index or abstract of title, marked the Bank’s mortgage as “Received for Record” on October 30, 1984 despite the fact that the letter transmitting the mortgage and accompanying documents is date-stamped April 13, 1984. To portray the Bank’s mortgage as "Received for Record” on October 30, 1984 is transparently false and violates the Coast Guard’s statutory duty under 46 U.S.C. § 921(b).
 

 [3]
 

 . The Debtor’s Chapter 11 reorganization proceeding was later converted to a Chapter 7 liquidation proceeding.
 

 [4]
 

 .The term ‘vessel of the United States’ means any vessel documented under the laws of the United States....” 46 U.S.C. § 911(4). "The term ‘documented’ means registered or enrolled or licensed under the laws of the United States_"
 
 Id.
 
 § 911(2). Coast Guard regulations state that a documented vessel is "a vessel for which a valid Certificate of Documentation is outstanding.” 46 C.F.R. § 67.01-1.
 

 [5]
 

 . In contrast to 46 U.S.C. § 1012, the recording provision established by the SMA,
 
 id.
 
 § 921, provides that:
 

 (a) No sale, conveyance, or mortgage which,
 
 at the time such sale, conveyance, or mortgage is made, includes a vessel of the United States,
 
 or any portion thereof, as the whole or any part of the property sold, conveyed, or mortgaged shall be valid, in respect to such vessel, against any person other than the grantor or mortgagor, his heir or devisee, and a person having actual notice thereof, until such bill of sale, conveyance, or mortgage is recorded in the office of the collector of customs of the port of documentation of such vessel, as provided in subsection (b) of this section.
 

 (Emphasis added). In this case, the Debtor conveyed a security interest in and executed a ship mortgage on the vessel in favor of the Bank before the Coast Guard issued a Certificate of Documentation for the vessel. Thus, the Bank might argue that their state law security interest was not invalidated by § 921. Such state law security interests, however, are invalidated by § 1012, which was adopted by Congress in the Home Port of Vessels Act, ch. 235, § 2, 43 Stat. 948 (1925). Further, 46 U.S.C. § 1014 notes that "[a]ll such provisions of ... the Ship Mortgage Act, 1920, as are in conflict with section[ ] ... 1012 of this title, are amended to conform therewith." Thus, the recording procedures established in § 921 are applicable to all mortgages on vessels of the United States regardless of when those mortgages were made.
 

 [6]
 

 . ‘‘[No] bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs or devisees, and persons having actual notice thereof; unless such bill of sale, mortgage, hypothecation, or conveyance be recorded in the office of the collector of the customs where such vessel is registered or enrolled.” Act of July 29, 1850, ch. 27, § 1, 9 Stat. 440 (codified in Revised Statutes of the United States § 4192 (1878)).
 

 [7]
 

 .
 
 See 46
 
 U.S.C. § 923 (copy of preferred mortgage shall be placed on board vessel and exhibited to any person having business with the vessel that may give rise to a maritime lien).
 

 [8]
 

 . The bankruptcy trustee argues that a non-maritime lien arising before the recording and endorsement of a preferred mortgage may become a "preferred maritime lien” by virtue of 46 U.S.C. § 953(a), which states that "the term ‘preferred maritime lien’ means (1) a lien arising prior in time to the recording and indorsement of a preferred mortgage in accordance with the provisions of this chapter.” We disagree. First, the language of § 953 suggests that subsections (1) and (2) merely identity preferred subsets of
 
 maritime
 
 liens. Second, to construe § 953(a)(1) to grant priority to
 
 all
 
 liens established before a mortgage is recorded
 
 and
 
 endorsed on the vessel’s documents would render ineffective the validity granted the mortgage -upon recordation pursuant to § 921. Third, caselaw agrees that § 953(a)(1) grants preferred maritime lien status only to prior-arising maritime liens.
 
 E.g., Peninsula Sav. & Loan Ass’n v. O/S Seismic Sea,
 
 1984 A.M.C. 2635, 2639-40 (D.Ore.1984);
 
 United States v. Oil Screws Ken,
 
 275 F.Supp. 792, 796 (E.D.La.1967);
 
 United States v. Jane B. Corp.,
 
 167 F.Supp. 352, 356 (D.Mass.1958);
 
 Freese
 
 v.
 
 Duwamish Shipyard (In re Taurus Enterprises),
 
 1986 A.M.C. 1316, 1317 (W.D.Wash.Bankr.1985).
 

 [9]
 

 . As previously noted, the procedures of 46 U.S.C. § 921 are applicable to the Bank’s mortgage despite the fact that the mortgage was made before the issuance of the Certificate of Documentation.
 
 See, supra,
 
 footnote 5.
 
 Cf. Merchants National Bank of Mobile v. Ward Rig No. 7,
 
 634 F.2d 952, 956 (5th Cir.1981) (effective date of documentation was date proper application was received by Coast Guard);
 
 The Enos,
 
 24 F.Supp. 387, 390 (W.D.Wash.1938) (same).
 

 [10]
 

 . The efficacy of the Coast Guard’s initial review was demonstrated in this case by the rejection, following an initial review, of an application to file a second preferred mortgage on the vessel. App. at 168-70, 271.
 

 [11]
 

 . For example, in
 
 Knickerbocker Trust Co. v. Penn Cordage Co.,
 
 66 N.J.Eq. 305, 58 A. 409 (N.J.1904), the court stated:
 

 It follows, therefore, that as soon as the chattel mortgage is deposited for record in the clerk’s office'it must be presumed to have been forthwith transcribed in the records, and that presumption continues so long as it remains in the office, and until it is actually transcribed, and when that is done the presumption becomes conclusive.
 

 Id.
 
 58 A. at 412.
 

 [12]
 

 . "Identifiable records and documents of the Coast Guard” are available for public inspection. 33 C.F.R. § 1.10-1; 49 C.F.R. § 7.1
 
 et seq.
 
 Further, the Coast Guard is required by 46 U.S.C. § 927 to provide, at the request of any person, a "certificate setting forth ... the material facts as to ... any mortgage covering ... a specified vessel [and] a certified copy of any ... mortgage ... with respect to such vessel.” Arguably, this provision requires disclosure of filed but unrecorded mortgages as well as recorded mortgages.